**LuVerne JOHNSON, et al., Appellants,**

v.

**STEELE–WASECA COOPERATIVE ELECTRIC, Respondent.**

**No. C4–90–2089.**

Court of Appeals of Minnesota.

May 7, 1991.

Review Denied July 24, 1991.

James W. Gardner, Marsha M. Mansfield, Lawton & Cates, S.C., Madison, Wis., Eugene J. Crosby, Crosby Law Offices, Faribault, for appellants.

Thomas E. Wolf, Susan J. Mehregan, O'Brien, Ehrick, Wolf, Deaner & Maus, Rochester, for respondent.

Considered and decided by DAVIES, P.J., and LANSING and PETERSON, JJ.

## OPINION

DAVIES, Judge.

The trial court granted summary judgment in favor of respondent Steele–Waseca Cooperative Electric. Appellants LuVerne Johnson, et al., claim summary judgment was erroneously based on Minn.Stat. § 541.051, the statute of limitations for causes of action arising out of improvements to real property. We agree, reverse, and remand for trial on the merits.

## FACTS

The parties stipulated to these facts for the purpose of the summary judgment motion:

Appellants operate a dairy farm in Kenyon, Minnesota. In 1980 they built a new barn and had respondent, the local power distributor, install new electrical equipment and wiring to the new barn. The utility also installed a center pole and transformer to bring power to the farm. Shortly after appellants transferred cattle to the new barn, they began noticing problems with the herd: reduced milk production, increase of mastitis, reproductive problems, decreased appetite, nervousness, and reduced resistance to disease, leading to loss of cattle.

In 1983, a veterinarian suggested to appellants that stray voltage could be the cause of these problems. Appellant called respondent to inspect and take voltage readings on the farm. On January 27, 1984, respondent installed a neutral isolator at the pole on appellants' farm and the problems with the cattle ceased soon thereafter.

Respondent continued testing periodically through April 1985. Appellants testified by affidavit that respondent never gave them a report of the test results. Appellants wanted a definitive answer as to whether stray voltage existed on the farm or not, and at what level, if it did. Respondent has records of the testing, but no record of conclusive statements to appellants. Appellants brought this action in January 1989 alleging breach of contract, negligence, nuisance, and strict product liability. The trial court granted respondent's motion for summary judgment based on the bar of various statutes of limitations. Appellants asked for reconsideration and the trial court denied the request.

## ISSUES

1. Is electrical distribution equipment installed upon a landowner's property, but owned by the utility, an "improvement to real property" under Minn.Stat. § 541.051?

2. Does the two-year statute of limitations in Minn.Stat. § 541.051 bar appellants' claim arising from stray voltage on their property?

## ANALYSIS

On appeal from summary judgment, this court must determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). A material fact is one that will affect the outcome of the

case depending upon its resolution. *Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). We must review the evidence in a light most favorable to the party against whom summary judgment was granted. *Offerdahl v. University of Minnesota,* 426 N.W.2d 425, 427 (Minn. 1988).

## I.

■ Minn.Stat. § 541.051, subd. 1(a) (1988), provides:

> [N]o action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an *improvement to real property* * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property * * * more than two years after discovery of the injury.[1]

(Emphasis added.)

Section 541.051 applies specifically to actions arising from improvements to real property. The Minnesota Supreme Court has applied the plain meaning of the term "improvements to real property":

> a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Pacific Indemnity Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977) (quoting *Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)).

The court must use a "common sense analysis" to determine in each case what is an "improvement to real estate." *Kemp v.*

*Allis–Chalmers Corp.,* 390 N.W.2d 848, 850 (Minn.App.1986). Under such analysis, Minnesota courts have given a broad definition to "improvements to real estate." *O'Connor v. M.A. Mortenson Co.,* 424 N.W.2d 92, 94 (Minn.App.1988), *pet. for rev. denied* (Minn. July 28, 1988) (unfinished steel stairway); *Kemp,* 390 N.W.2d at 850 (electrical transformer, switchgear, and connecting cable); *Citizens Sec. Mut. Ins. Co. v. General Elec. Corp.,* 394 N.W.2d 167, 170 (Minn.App.1986) (light fixtures and ballasts), *pet. for rev. denied* (Nov. 26, 1986); *Lovgren v. Peoples Elec. Co.,* 368 N.W.2d 16, 18 (Minn.App.1985, reversed on other grounds), 380 N.W.2d 791, 793 (Minn.1986) (transformer vault in a steel mill).

Respondent argues that the electrical equipment installed on appellants' farm meets the definition of improvements to real property under section 541.051. We agree as to the installations added to the barn and other buildings owned by the appellants, but we disagree as to the pole and pendant equipment which respondent owns and uses to distribute electric power.

We recognize that Minnesota courts, as a rule, do not distinguish the part from the whole when determining whether an asset is an improvement to real property. *Kemp,* 390 N.W.2d at 851. The equipment involved in this case, however, raises a new issue of liability for stray voltage, an issue virtually unexplored by Minnesota's judiciary. Unlike earlier cases involving improvements attached to buildings, here respondents installed an electric pole and transformer which stands independently on appellants' property and serves the distribution purposes of the cooperative. This equipment enables respondent to increase its electric service to appellants' farm. Rather than being an improvement to appellants' property, this equipment is an addition to respondent's distribution system.

---

**1.** Note the ending phrase "discovery of the *injury.*" Prior to an amendment effective April 25, 1988, 1988 Minn.Laws ch. 607, §§ 1 & 3, the two-year limitations period began to run when a person discovered, or with reasonable diligence should have discovered, the *defect* or unsafe condition in the property. *Wittmer v. Ruegemer,* 419 N.W.2d 493, 496–97 (Minn.1988). The 1988 change to "injury," applying to all cases pending or commenced after its effective date, applies here.

Appellants do not allege a defect in the electrical equipment attached to their farm buildings. Rather, they charge the electric service itself was defective—the defect being the introduction of stray voltage to the farm. Respondent owns and has maintained continuous control over the electrical pole and transformer which allegedly released the stray voltage over the neutral line to appellants' property. Appellants claim that respondent was negligent not to repair, not to prevent, and not to warn of the risk of stray voltage.

■ Minn.Stat. § 541.051 limits the time to bring an action in order to protect from suits those who install or create the improvement and then surrender control of it. We do not interpret Minn.Stat. § 541.051 to shelter from liability an electric power company that installs and maintains control of an electric pole and transformer, especially when the purpose is to distribute power. Minn.Stat. § 541.051 does not protect the installer/owner from its own ongoing negligence.

We conclude that the electrical equipment respondent installed on appellants' farm does not constitute an "improvement to [appellants'] real property" under Minn. Stat. § 541.051 and thus that section does not bar appellants' action.

## II.

■ Appellants argue, and we agree, that Minn.Stat. § 541.05 (1988), the general statute of limitations, should be applied to their common law tort claims. That statute provides:

Subdivision 1. * * * [T]he following actions shall be commenced within six years:

(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;

(2) Upon a liability created by statute * * *;

(3) For a trespass upon real estate;

(4) For taking, detaining, or injuring personal property, including actions for specific recovery thereof;

(5) For criminal conversation, or for any other injury to the person or rights of another, not arising on contract, and not hereinafter enumerated;

\*   \*   \*   \*   \*   \*

Subd. 2. Unless otherwise provided by law, any action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product shall be commenced within four years.[2]

Minn.Stat. § 541.05, subd. 1(1)–(5), and subd. 2 (1988).

Under this statute, appellants had six years to raise negligence or nuisance claims against respondent. Minn.Stat. § 541.05, subd. 1. Under general principles of tort law, a negligence action accrues when the act causes the injury upon which one could base a claim. *Wittmer v. Ruegemer*, 419 N.W.2d 493, 496 (Minn. 1988). Appellants claim the stray voltage continued to cause harm to their herd until respondent installed the neutral isolator on January 27, 1984. They claim all cattle problems then promptly ceased. If, under one possible view of the facts, they discovered injuries which respondent's stray voltage caused in January 1984, appellants, under the six-year statute of limitations, could have brought a timely action until January 27, 1990. Since appellants brought this action in January 1989, their negligence claims may not be barred by the statute of limitations and they have a right to a trial on the merits. The trial court erroneously granted summary judgment.

## DECISION

The trial court made a threshold error when it ruled as a matter of law that appellants' claims arose out of an improvement to real estate and granted respondent's motion for summary judgment based

---

**2.** The four-year statute of limitations of subdivision 2 applies to defective "products." We need not address the issue of whether electricity is a product because the cause of action for strict liability is barred four years after discovery of the injury. If electricity were a "product," the statute of limitations began running at the time appellants discovered the harm to their cattle in 1980. As a result, Minn.Stat. § 541.05, subd. 2, bars a 1989 claim based on strict liability.

on Minn.Stat. § 541.051. The timeliness of appellants' action for negligence arising from the manner in which respondent operated its electrical power distribution system should be evaluated under Minn.Stat. § 541.05, subd. 1.

Reversed and remanded.

PETERSON, Judge (dissenting).

I respectfully dissent. The parties stipulated that the problems with appellants' dairy herd began after respondent installed an electric pole and transformer on appellant's farm in 1980 and ceased soon after respondent installed a neutral isolator at the pole on January 27, 1984. Appellants argue the electric service itself was defective, not the equipment. However, an alteration of the equipment stopped the problems. Under these facts, the injury suffered by appellants arose out of the condition of the electric pole and transformer before installation of the neutral isolator.

The majority concludes that, because respondent maintains control of the pole and transformer installed on appellant's property, the pole and transformer do not constitute an improvement to real property under Minn.Stat. § 541.051 (1988). There is nothing in section 541.051 that suggests its application is limited to suits against those who install or create an improvement to real property and surrender control of it.

The majority correctly observes that Minn.Stat. § 541.051 does not protect an installer/owner of an improvement to real property from its own ongoing negligence. Minn.Stat. § 541.051, subd. 1(c) specifically provides:

Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

However, the injury here was not caused by respondent's ongoing negligence. It was caused by the failure to install the neutral isolator when the pole and transformer were installed. Until the neutral isolator was installed the condition of the pole and transformer was defective and unsafe.

The plain meaning of the term "improvements to real property" adopted by the Minnesota Supreme Court clearly applies to the pole and transformer installed by respondent. An improvement is:

a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.

*Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977) (quoting *Kloster–Madsen, Inc. v. Tafis, Inc.,* 303 Minn. 59, 63, 226 N.W.2d 603, 607 (1975)).

The pole and transformer are a permanent addition to appellants' property. There is no expectation that they will be removed from the property at any time in the future. The pole and transformer enhance the capital value of appellants' farm. With the increased electrical service made possible by the pole and transformer, appellants are able to do things on their farm that were not possible before the pole and transformer were installed. The sole reason for installation of the pole and transformer was to enable appellants to expand their farming operation. Though physically separate, the pole and transformer are an integral part of the new facilities added to appellants' farm in 1980. The increased production capabilities of these facilities increase the value of the real estate. Installation of the pole and transformer involved the expenditure of labor and money. Finally, as already stated, the sole purpose for installing the pole and transformer was to enable appellants to expand their farming operation. The pole and transformer installation was specifically designed to accomplish this purpose. The pole and transformer did not take the place of existing electrical service; they expanded existing service.

There is nothing in Minn.Stat. § 541.051 or the supreme court's interpretation of section 541.051 that suggests that the ap-

plication of the term "improvement to real property" to any physical structure should depend upon the ownership or control of the physical structure.

Because the injury suffered by appellants arose out of the defective condition of an improvement to real property, the trial court correctly found that appellants' cause of action was barred by the two year statute of limitations under Minn.Stat. § 541.051.