STATE FARM FIRE AND CASUALTY,
et al., Appellants,

v.

AQUILA INC. d/b/a People's Natural
Gas, f/k/a UtiliCorp United Inc., d/b/a
People's Natural Gas/Energy One, Re-
spondent,

Northern Pipeline Construction
Company, Respondent,

Robert Sauer, et al., Defendants,

George Rucker, et al., Nominal
Defendants.

No. A04–1816.

Court of Appeals of Minnesota.

June 14, 2005.

Bradley J. Ayers, David A. Wikoff, Robert W. Vaccaro, Flynn, Gaskins & Bennett, L.L.P., Minneapolis, MN, for appellants State Farm Fire and Casualty and Auto Owners Insurance Company.

Jeremy R. Stevens, Bird & Jacobsen, Rochester, MN, for appellant Joan Hernlem.

Dale M. Wagner, Bassford Remele, Minneapolis, MN, for respondent Aquila Inc.

Scott P. Drawe, Drawe & Heisick, Minneapolis, MN, for respondent Northern Pipeline Construction Company.

## OPINION

PORITSKY, Judge.*

Appellants, owners and insurers of property damaged by the explosion of a natural-gas pipeline, brought suit against respondents, one of which is the owner of the pipeline, and the other is the firm that installed it. The district court granted summary judgment in favor of respondents on the ground that appellants' suits were barred by Minn.Stat. § 541.051 (2004), the statute of repose for improvements to real property. Appellants contend that the district court erred (1) in determining that the natural-gas pipeline at issue constituted an "improvement to real property" for the purposes of Minn. Stat. § 541.051; (2) in granting summary judgment for respondents where appellants alleged negligence and negligence per se, not merely as to the installation of the natural-gas pipeline, but also as to the inspection, maintenance, and/or repair of the natural-gas system; and (3) in determining that no negligence existed even though a prima facie showing by appellants was all that was required, discovery had only just begun, and substantive negligence issues were not briefed by the parties.

## FACTS

In November 1990, respondent Aquila Inc., owner of a natural-gas pipeline at Hallmark Terrace Trailer Park, contracted with respondent Northern Pipeline Construction Company to replace the existing pipeline. The existing main lines and service lines (i.e., the lines that run from the main lines to the customers' homes) were made of steel. That pipeline was to be abandoned and Northern Pipeline was to install a new pipeline made of polyethylene. According to the work order, the old pipeline was replaced because of the hazardous location of the steel main and service lines. Appellants allege that the polyethylene pipeline was installed under driveways and roads using a pneumatic boring tool, and further allege that during the installation process, Northern Pipeline installed the new pipeline through an existing clay tile sewer line. The parties do no dispute the district court's finding that Aquila owned, and still owns, the polyethylene pipeline system. Northern Pipeline completed its work in December 1990. Thereafter, Aquila maintained ownership and control over the pipeline system. No further maintenance or repairs were performed on the pipeline until 2002.

In early 2002, Hallmark Terrace hired Robert Sauer, doing business as Drain–Rite, to repair sewer drains that were blocked by tree roots. On February 13, 2002, Drain–Rite used a trap-and-drain auger to unclog the sewer pipes. Appellants claim that in doing so, Drain–Rite's auger struck and ruptured the intersecting gas line, causing natural gas to migrate through the sewer pipes and into several of the manufactured homes at Hallmark Terrace. The gas built up and ignited, resulting in an explosion that destroyed property either owned or insured by appellants.

In November 2002, appellants brought suit against respondents and Drain–Rite, but eventually settled with Drain–Rite. Appellants claim that respondents were negligent in the "inspection, maintenance, repair and/or installation of the natural gas system." Appellants also claim that

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

respondents were negligent per se for violating "applicable codes and standards regarding the inspection, maintenance, repair and/or installation of the natural gas system." Respondents brought motions for summary judgment, arguing that the suit was time-barred by the ten-year statute of repose for improvements to real property under Minn.Stat. § 541.051 (2004).

Appellants brought a cross-motion for summary judgment, seeking an order that the statute of repose was inapplicable because the pipeline was not an improvement to real property for the purposes of Minn. Stat. § 541.051, but was instead merely an addition to Aquila's natural-gas distribution system. Relying on *Johnson v. Steele–Waseca Coop. Elec.*, 469 N.W.2d 517, 519 (Minn.App.1991), *review denied* (Minn. July 24, 1991), appellants argued that "even if the newly installed polyethylene gas pipes constitute an 'improvement,' which [appellants] dispute, this improvement is an addition to Aquila's distribution system." Appellants further argued, quoting *Johnson*, 469 N.W.2d at 520, that even if the pipeline is an improvement to real property, "Minn.Stat. § 541.051 does not protect the installer/owner from its own . . . negligence."

The district court held that appellants' suit was time-barred as to both respondents by Minn.Stat. § 541.051, and granted respondents' motions for summary judgment. In doing so, the district court first ruled that Aquila's pipeline constituted an improvement to real property. The court then determined that appellants' injuries arose out of the defective and unsafe condition of the pipeline. Finally, the district court considered section 541.051, subd. 1(c), which creates an exception for suits based on the negligence of owners or persons in possession of an improvement to real property. The court ruled that because Aquila did not have any notice of an unsafe condition, appellants failed to present evidence that Aquila was negligent in the maintenance, operation, or inspection of the pipeline, and therefore the exception did not apply. As to Northern Pipeline, the court ruled that the exception did not apply, because Northern Pipeline relinquished all control over the pipeline system after installation in 1990 and never owned or possessed it. This appeal follows.

## ISSUES

I. Did the district court err in deciding that the natural-gas pipeline constituted an improvement to real property under Minn. Stat. § 541.051 (2004)?

II. Did the district court err in determining that no negligence existed?

## ANALYSIS

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, this court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The construction and applicability of a statute of limitations is a question of law subject to de novo review. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998).

## I.

Appellants contend that the district court erred in holding that the natural-gas pipeline owned by Aquila was an improvement to real property under Minnesota's ten-year statute of repose for injuries arising out of improvements to real property. *See* Minn.Stat. § 541.051

(2004).[1] This statute provides in relevant part:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property ... arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of the injury, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property ... more than ten years after substantial completion of the construction....

. . . .

(c) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

*Id.,* subd. 1.

The Minnesota Supreme Court has adopted a common-sense interpretation of the phrase "improvement to real property" as used in Minn.Stat. § 541.051.*Pac. Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn.1977). In doing so, the supreme court has defined an "improvement to real property" as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distin-

guished from ordinary repairs." *Id.* (quotation omitted). Under this common-sense analysis, we have applied the phrase "improvement to real property" broadly. *See Nolan & Nolan v. City of Eagan,* 673 N.W.2d 487, 496 (Minn.App.2003) (holding that a storm sewer system is an improvement to real property), *review denied* (Minn. Mar. 16, 2004); *Patton v. Yarrington,* 472 N.W.2d 157, 160 (Minn.App.1991) (holding that smoke detectors are improvements to real property), *review denied* (Minn. Aug. 29, 1991); *O'Connor v. M.A. Mortenson Co.,* 424 N.W.2d 92, 94 (Minn. App.1988) (holding that an unfinished stairway is an improvement to real property), *review denied* (Minn. July 28, 1988).

 Appellants contend that their suit is not time-barred by Minn.Stat. § 541.051 because the gas pipeline in question was not an improvement to real property; instead, they argue, it was part of Aquila's natural-gas distribution system. Appellants cite our decision in *Johnson v. Steele–Waseca Coop. Elec.,* 469 N.W.2d 517 (Minn.App.1991), *review denied* (Minn. July 24, 1991), as controlling. In *Johnson,* the plaintiffs built a barn on their dairy farm and contracted with the local power distributor to install new electrical equipment and wiring to the barn. *Id.* at 518. The utility also installed a center pole and transformer on the plaintiffs' land to bring power to the farm. *Id.* at 518–19. Shortly after moving cattle into the new barn, the plaintiffs noticed several health problems with the herd that led to the loss of cattle. *Id.* at 518. A veterinarian suggested that stray voltage could be the cause of the health problems. *Id.* The plaintiffs filed

---

**1.** "A statute of repose starts the limitation period for bringing an action from the date of [completion of an improvement], unlike a statute of limitations which starts from the date of injury. A typical statute of repose will specify a presumptive number of years after which an action cannot be brought." *Hodder*

*v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 830 (Minn.1988). Under Minn.Stat. § 541.051, a party is barred from bringing suit more than ten years after substantial completion of an improvement to real property.

suit, claiming that the utility "was negligent not to repair, not to prevent, and not to warn of the risk of stray voltage." *Id.* at 520. The district court held that the plaintiffs' suit was time-barred by Minn. Stat. § 541.051, but we reversed. *Id.* at 520–21.

In *Johnson,* we drew a distinction between (1) "the installations added to the barn and other buildings owned by the [plaintiffs]," and (2) "the pole and pendant equipment, which [the utility] owns and uses to distribute electrical power." *Id.* at 519. We held that the former—those items owned by the customer—were improvements to real property under Minn. Stat. § 541.051. *Id.* But we held that items owned by the utility were not such improvements. *Id.* In doing so, we explained that the utility

> installed an electric pole and transformer which stands independently on [plaintiffs'] property and serves the distribution purposes of the cooperative. This equipment enables the utility to increase its electric service to [the] farm. Rather than being an improvement to [plaintiffs'] property, this equipment is an addition to [the utility's] distribution system.

*Id.*

We further noted, in *Johnson,* that the plaintiffs were not alleging a defect in the electrical equipment attached to the barn, but that the electrical service itself was defective because of the stray voltage. *Id.* at 520. In concluding that, with respect to the utility, the center pole and transformer were not improvements to real property, we stated:

> Minn.Stat. § 541.051 limits the time to bring an action in order to protect from suits those who install or create the

improvement and then surrender control of it. We do not interpret Minn.Stat. § 541.051 to shelter from liability an electric power company that installs and maintains control of an electric pole and transformer, especially when the purpose is to distribute power.

*Id.* at 520.

Thus, the central facts in *Johnson* that apply here are that the transformer and center pole (1) were owned and controlled by the utility, and (2) were part of the utility's distribution system. We first consider the district court's decision to grant summary judgment in favor of Aquila. Appellants argue that *Johnson* controls, and therefore the court erred. Respondents make a number of arguments in support of their position that *Johnson* does not control. Respondents first argue that "to the extent *Johnson* purports to exclude owners of improvements from the protection of Minnesota's statute of repose, it is antagonistic to Minnesota jurisprudence."[2] In support of this contention, respondents cite a number of cases in which, they claim, "no Minnesota appellate court has followed [*Johnson's*] holding." But the cases cited by respondents do not deal with a utility-owned distribution network.

We recognize that in *Kemp v. Allis-Chalmers. Corp.,* we said that "[a]n electrical transformer is an improvement to real property for the purposes of the statute." 390 N.W.2d 848, 850 (Minn.App.1986) (citing *Lovgren v. Peoples Elec. Co.,* 380 N.W.2d 791, 794–95 n. 5 (Minn.1986)). But *Kemp* is of questionable authority as applied here, because the improvement at issue in *Kemp* was not a transformer, but electrical cables clamped to a starter compartment of a waste gas fan located inside a pellet plant. *Kemp* 390 N.W.2d at 849. It is not clear from the opinion even if a

---

**2.** In its brief, Northern Pipeline states that it joins in the analysis of Aquila on the issue of

whether Aquila's natural-gas pipeline is an improvement to real property.

transformer was part of an improvement or involved in the plaintiff's injury. And *Kemp's* citation of *Lovgren* is not entirely on point, because the improvement at issue in *Lovgren* was a not a transformer, but a transformer vault, located inside of a steel mill. *Lovgren,* 380 N.W.2d at 793. In any event, in neither *Kemp* nor *Lovgren* was there a showing that a utility owned the improvement at issue, or that the improvement was part of a utility-owned distribution network. Therefore we conclude that neither case conflicts with our reading of the court's holding in *Johnson.*

Next, respondents attempt to distinguish the facts of this case from *Johnson.* Respondents point out that the pipeline, unlike the center pole and transformer in *Johnson,* was underground and not accessible for routine inspection and maintenance. But respondents cite no authority for the proposition that a gas company is relieved from a duty of due care merely because its pipeline is underground Respondents further state that the plaintiffs in *Johnson* alleged an ongoing tort of defective electrical service while the appellants in this case allege defective construction. But as we demonstrate below in section II, appellants have made a showing that Aquila was negligent in its maintenance, operation, and inspection of the pipeline.

The record contains Aquila's documentation on terms and conditions of its service, indicating that "[t]he point of delivery and the point where Company ownership and maintenance of service pipe ends, shall be at the outlet side of the Company's meter." Thus it is clear that the gas pipeline was owned and controlled by Aquila and served the utility's distribution purposes by enabling Aquila to deliver natural gas to the residents of the trailer park. We therefore hold that *Johnson* controls, and we conclude that with respect to Aquila, the gas pipeline was not an improvement to real property under Minn.Stat. § 541.051 but an addition to the utility's distribution system. Therefore, we reverse the district court insofar as the court ruled that section 541.051 bars appellants' claim against Aquila.

Unlike Aquila, Northern Pipeline relinquished all ownership and control of the pipeline after installation. Moreover, the pipeline was not part of Northern Pipeline's distribution system; nor, in fact, did it serve any commercial purpose for Northern Pipeline after installation. It follows that with respect to Northern Pipeline, the pipeline is an improvement to real property for the purposes of Minn.Stat. § 541.051, and the statute bars appellant's suit against Northern Pipeline. Therefore, we affirm the district court's granting of summary judgment in favor of Northern Pipeline.

## II.

Appellants contend that the district court erred (1) in dismissing appellants' claims on summary judgment where appellants alleged negligence and negligence per se against respondents, not merely as to the installation of the natural-gas pipeline, but also as to the inspection, maintenance, and/or repair of the natural-gas system; and (2) in determining that no negligence existed even though a prima facie showing by appellants was all that was required, discovery had only just begun, and substantive negligence issues were not briefed by the parties.

 After holding that Minn.Stat. § 541.051 applied, the district court examined the statute's exception under subdivision 1(c), which states that "[n]othing in this section shall apply to actions for damages resulting from the negligence in the maintenance, operation or inspection of the real property improvement against the

owner or other person in possession." Minn.Stat. § 541.051, subd. 1(c). With respect to Aquila, the district court held that because appellants failed to provide evidence of notice, subdivision 1(c) did not apply; specifically, the court said Aquila "had no reasonable notice of an existing or potential danger nor did it possess any information that would suggest to a person of ordinary care and prudence that some part of the polyethylene system was unsafe for the transportation ... of gas." The district court held that Northern Pipeline could not be held liable under subdivision 1(c) because Northern Pipeline had no subsequent involvement as owners or controllers of the pipeline after installation in 1990. We agree as to Northern Pipeline. With respect to Aquila, the application of the exception in subdivision 1(c) is rendered moot by our holding that Minn.Stat. § 541.051 does not bar appellants' claims against Aquila.

■ Notwithstanding the conclusion that section 541.051 does not bar appellants' claims against Aquila, there remains the issue of whether appellants have made a showing of Aquila's negligence sufficient to withstand summary judgment. Appellants first make the procedural argument that the district court was premature to grant summary judgment when "only preliminary discovery had occurred, and the discovery deadline set by the scheduling order, when issued, was several months ahead of when the court ruled on respondents' summary judgment motions." But Minn. R. Civ. P. 56.06 provides that "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Appellants do not indicate that they requested a continuance from the district court for further discovery. Moreover, appellants not only opposed respondents' motions for summary judgment, but brought their own motion for summary judgment.

■ Appellants next turn to the merits and argue that they made a showing of negligence sufficient to withstand respondents' motions for summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. To withstand a defendant's motion for summary judgment, a plaintiff claiming negligence must make a prima facie case of negligence, which simply means a case that prevails in the absence of evidence invalidating it. *See Patton v. Newmar Corp.*, 538 N.W.2d 116, 119–20 (Minn.1995) (holding the district court properly granted summary judgment when plaintiff failed to establish a prima facie case of liability); *Trudeau v. Sina Contracting Co.*, 241 Minn. 79, 87, 62 N.W.2d 492, 498 (1954) (defining prima facie negligence). "Prima facie negligence means that evidence of negligence which, unexplained or uncontradicted and standing alone, appears to be sufficient to establish the fact. In other words, it is evidence which suffices to establish the fact unless rebutted, or until overcome, by other evidence." *Trudeau*, 241 Minn. at 87, 62 N.W.2d at 498.

■ In the ordinary course of things, gas does not escape if those responsible for its management use proper care. *See Gould v. Winona Gas Co.*, 100 Minn. 258, 266, 111 N.W. 254, 257 (1907) (noting that "at common law and apart from the act of Congress an explosion is prima facie evidence of negligence"); *see also Manning v. St. Paul Gaslight Co.*, 129 Minn. 55, 57, 151 N.W. 423, 424 (1915) (stating that

*Gould* "goes to the proposition that the manufacturer and distributor of illuminating gas is held in damages for the escape of gas on the principle of negligence ... and that the escape of this agency in highly destructive quantities is prima facie evidence of negligence").

Here, the district court correctly noted, "Minnesota courts have continuously held that gas companies owe a duty to act with due care with regards to the inspection and maintenance of its main and service lines." But solely on the ground that Aquila "never had notice of any existing or potential danger," the court found no evidence of negligence. The court did not discuss whether, apart from the lack of notice, appellants had made a showing of a prima facie case of Aquila's negligence.

In ruling that lack of notice to Aquila precluded a showing of negligence, the district court relied on *Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746 (Minn.1980), and *Wilson v. Home Gas Co.*, 267 Minn. 162, 125 N.W.2d 725 (1964). In *Ruberg*, 297 N.W.2d at 751, the supreme court stated that "[l]iability for damages caused by a gas leak exists where the gas supplier, having reasonable notice of an existing or potential danger, negligently performs an inspection or repair, or fails to inspect, repair, or shut off the gas." In *Wilson*, the supreme court stated that "[t]he duty to inspect does not require a system of inspection 'at all times' but rather a duty to make reasonable inspections." 267 Minn. at 172, 125 N.W.2d at 732.

But *Wilson* also makes a distinction between pipes owned by the customer and pipes owned by the gas company. The supreme court stated:

The duty to inspect does not require a system of inspection 'at all times' but rather a duty to make reasonable inspections, and then, as to appliances not owned or controlled by the [gas compa-

ny], only after a reasonable notice of the existence of danger. To apply any other rule would make the gas supplier an insurer if anything went wrong with any of the appliances over which it had no control. Recognizing that escaping gas is a dangerous substance, we have consistently held that the supplier of gas is not an insurer of customers for injury or damage resulting therefrom, *unless it can be shown that the gas has escaped from a pipe over which the [gas company] was charged with responsibility.... In other words, a greater duty arises as to pipes and appliances that are the responsibility of the [gas company], like its gas lines.... Thus ... we applied a strict rule of liability when gas escapes from a pipe over which the [gas company] has control and for which it is responsible,* but the same rule does not apply to gas escaping from appliances owned by the customer and maintained by him.

*Id.,* at 172–73, 125 N.W.2d at 732 (citations omitted) (emphasis added).

In *Ruberg,* the supreme court was addressing the notice requirement only in cases where the utility did not own or control the pipeline:

A supplier of gas must exercise a degree of care commensurate with the danger in a situation. With regard to that duty we have said: It may be generally stated that, where a gas company does not install or own the service lines on private property, and exercises no control over them, it is not responsible for the condition in which they are maintained and is not liable for damages caused by a leak therein of which it does not have notice. And a gas company, in the absence of notice of defects in the service lines, is not required to make inspections of the lines on private prop-

erty when the lines are not owned by it or are under its control.

297 N.W.2d at 750–51 (citation and quotation omitted).

Here, Aquila owned and controlled the pipeline. As a consequence, the fact that Aquila never received notice of a defect or dangerous condition in its line does not defeat appellants' negligence claim.

In addition to the presumption that gas does not escape from pipelines if those responsible exercise proper care, there is the undisputed fact that for 11 years Aquila's gas line ran through a clay tile sewer. Appellants have alleged that Aquila was negligent in the inspection, maintenance and repair of its lines. Aquila argues that its gas line was "buried underground and was not readily accessible for inspection without significant expense" and that "the polyethylene pipeline system was specifically designed not to need any routine maintenance or inspection." But these allegations raise a fact issue of whether they were a reasonable excuse for Aquila's failure to detect and remedy a dangerous condition. *See Manning*, 129 Minn. at 56–58, 151 N.W. at 424–25 (affirming a jury verdict against a gas company for a wrongful death caused by a leak in a pipeline buried 27 inches below the surface). We conclude that appellants established a prima facie case of Aquila's negligence.

## DECISION

We affirm the district court's decision to grant summary judgment in favor of Northern Pipeline. But the district court erred in ruling as a matter of law that Minn.Stat. § 541.051 bars appellants' claims against Aquila and that appellants failed to present evidence of Aquila's negligence. Therefore, we reverse the district court's decision granting summary judgment in favor of Aquila.

**Affirmed in part, reversed in part, and remanded.**

KALITOWSKI, Judge (concurring in part, dissenting in part).

I concur that the district court properly granted summary judgment in favor of Northern Pipeline under Minn.Stat. § 541.051 (2004). But I respectfully dissent from the determination that the district court erred in granting summary judgment in favor of Aquila. The district court correctly held that the ten-year statute of repose in Minn.Stat. § 541.051 applies to Aquila and that the exception to the statute of repose in Minn.Stat. § 541.051, subd. 1(c), does not apply on this record.

In a well-reasoned opinion, the district court properly applied Minn.Stat. § 541.051 to appellants' action against Aquila and determined the action was time-barred. The court found that, under the plain language of the statute and numerous cases interpreting the statute, the new polyethylene pipe was "an improvement to real property" because it (1) enhanced the trailer park's "capital value and its ability to safely and efficiently provide natural gas to its tenants"; and (2) "was built to extend the useful life of the new natural gas system and to improve its performance over that of the original steel pipeline system." The evidence in the record supports these findings.

Contrary to appellants' argument, neither Aquila's ownership and control of the pipeline, nor the fact that Aquila is a utility that uses the pipeline to supply appellants with natural gas, provide a basis for a determination that the pipeline is not an improvement to real property. The statute contains no such exceptions.

In attempting to graft this exception on to Minn.Stat. § 541.051, appellants rely on a 1991 decision by this court, *Johnson v.*

*Steele–Waseca Coop. Elec.,* 469 N.W.2d 517 (Minn.App.1991). Appellants argue that Aquila's pipeline cannot be an improvement to real property because the pipeline is owned by Aquila and used to distribute natural gas. But *Johnson,* which has never been cited for this holding, is not applicable here because by its own terms, *Johnson* addressed an alleged improvement that "raises a new issue of liability for stray voltage, an issue virtually unexplored by Minnesota's judiciary." *Id.* at 519. Moreover, unlike the facts here, where the improvement did not stand alone, in *Johnson,* the court specifically distinguished "earlier cases involving improvements attached to buildings" by pointing out that the alleged improvements at issue were "an electric pole and transformer which stands independently on appellants' property and serves the distribution purposes of the cooperative." *Id.* And finally, unlike the findings of the district court here, the *Johnson* court concluded that "[r]ather than being an improvement to appellants' property, this equipment is an addition to respondent's distribution system." *Id.* *Johnson* does not apply to the facts here. Because the district court properly applied the statute and appropriate caselaw, and determined that the pipeline was an improvement to real property, I would affirm.

On this record I would also affirm the district court's determination that Aquila is entitled to summary judgment on appellants' claim that Aquila was negligent in maintaining, operating or inspecting the improvement to real property. Importantly, other than making a general allegation of negligence in their complaint, appellants did not present the district court with any facts establishing ongoing negligence by Aquila. And mere averments are not sufficient to survive summary judgment. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997).

In addition, the presumption that "gas does not escape from pipelines if those responsible exercise proper care" does not apply to establish a prima facie case of Aquila's negligence here because: (1) it is undisputed that the gas leak at issue was caused when Drain–Rite, another defendant who has entered into a settlement with appellants, operated an auger that struck and ruptured the gas line; and (2) appellants merely alleged negligence but offered no evidence as to the standard of care that was breached and no facts indicating how Aquila was negligent in maintaining, operating or inspecting the pipeline.

I would affirm the district court in all respects.