**STATE FARM FIRE AND CASUALTY, et al., Respondents,**

v.

**AQUILA INC. d/b/a People's Natural Gas, f/k/a UtiliCorp United Inc., d/b/a People's Natural Gas/Energy One, Appellant,**

**Northern Pipeline Construction Company, Defendant,**

**Robert Sauer, et al., Defendants,**

**George Rucker, et al., Nominal Defendants.**

No. A04–1816.

Supreme Court of Minnesota.

Aug. 3, 2006.

Charles E. Lundberg, Dale M. Wagner, Bassford Remele, Minneapolis, MN, Martin M. Loring, Jason R. Scheiderer, Kansas City, MO, for Appellant.

Bradley J. Ayers, Robert W. Vaccaro, Daniel B. Strunk, Flynn, Gaskins & Bennett, LLP, Minneapolis, MN, for Respondent State Farm and Auto Owners.

Jeremy R. Stevens, Bird Jacobsen & Stevens, Rochester, MN, for Respondent Joan Hernlem.

## OPINION

ANDERSON, G. BARRY, Justice.

Respondents, State Farm Fire and Casualty (State Farm), Auto Owners Insurance Company (Auto Owners), and Joan Hernlem brought suit against appellant, Aquila, Inc. (Aquila), defendant Northern Pipeline Construction Company (Northern Pipeline), and other defendants for damages that were caused by a natural gas leak from a pipeline system that is owned

and operated by Aquila and was installed by Northern Pipeline. The district court granted summary judgment in favor of Aquila and Northern Pipeline, concluding that Minn.Stat. § 541.051 (2004) barred respondents' claims. Respondents appealed, and the court of appeals, in a split decision, affirmed summary judgment for Northern Pipeline, reversed summary judgment for Aquila, and remanded the matter to the district court. *State Farm Fire & Casualty v. Aquila Inc.*, 697 N.W.2d 636 (Minn. App.2005). We reverse and reinstate summary judgment for Aquila.

Aquila owns and operates natural gas pipelines in the United States. Hallmark Terrace Trailer Park (Hallmark Terrace) is a mobile home park located in Rochester, Minnesota. Prior to 1990, Aquila owned and operated a steel pipeline-gas system that serviced the residences at Hallmark Terrace.

In 1990, Aquila decided to replace the gas system. Aquila hired Northern Pipeline to build and install the new natural gas system using polyethylene pipelines. The work order for the project stated that the new system was to be installed because of the hazardous location of the existing steel pipelines. The cost of installing the new system exceeded $21,000 and was completed in December 1990. Unknown to the parties, during the installation a section of the new polyethylene pipeline was mistakenly pushed through a section of an existing clay tile sewer line. Aquila abandoned the steel pipeline system upon the completion of the new system. No maintenance or repairs were performed on the natural gas system prior to the incident that prompted this lawsuit.

In early 2002 Hallmark Terrace hired Robert Sauer to repair sewer drains that were blocked by tree roots. On February 13, 2002, Sauer used a trap-and-drain auger to unclog the sewer pipes. During the process, the auger struck and ruptured the intersecting natural gas line, causing natural gas to escape through the sewer pipes and into several homes. The gas accumulated and ignited, resulting in an explosion and ensuing fire that damaged the real and personal property of several Hallmark Terrace residents.

Respondents brought an action, claiming that Aquila and Northern Pipeline "failed to exercise reasonable care and [were] negligent in the inspection, maintenance, repair and/or installation of the natural gas system at Hallmark Terrace." Respondents also claimed that Aquila and Northern Pipeline were negligent per se for violating "applicable codes and standards regarding the inspection, maintenance, repair and/or installation of the natural[-]gas system."

Following discovery, Aquila and Northern Pipeline filed motions for summary judgment, arguing that respondents' claims were barred by Minn.Stat. § 541.051, which imposes a 10–year repose period on all causes of actions "arising out of the defective and unsafe condition of an improvement to real property." Minn. Stat § 541.051, subd. 1(a) (2004). Respondents filed a cross-motion for summary judgment, arguing Minn.Stat. § 541.051 did not apply to their claims because the natural gas pipeline system was merely an addition to the existing natural gas distribution system, and not an improvement to real property. Respondents further argued that, even if the natural gas pipeline system was an improvement to real property, Aquila and Northern Pipeline were not entitled to the protections afforded by the statute because Minn.Stat. § 541.051, subd. 1(c), provides an exception for claims arising out of the "actions for damages resulting from negligence in the maintenance, operation or inspection of the real

property improvement against the owners or other persons in possession."

The district court granted Aquila and Northern Pipeline's motions for summary judgment and dismissed respondents' claims against Aquila and Northern Pipeline. In concluding that Minn.Stat. § 541.051 applied to bar respondents' claims, the court held that the natural gas pipeline system constituted an improvement to real property and respondents' injuries arose out of the defective and unsafe condition of the pipeline. Further, the court concluded that respondents failed to present evidence that Aquila was negligent in the maintenance, operation, or inspection of the pipelines, and therefore, the Minn.Stat. § 541.051, subd. 1(c), exception did not apply. As to Northern Pipeline, the court ruled that the exception also did not apply because Northern Pipeline relinquished all control over the natural gas pipeline system after the installation and never owned or possessed the system.

Respondents appealed, and the court of appeals affirmed in part, reversed in part, and remanded the matter to the district court. *State Farm*, 697 N.W.2d at 645. The court unanimously affirmed the district court's decision to grant summary judgment in favor of Northern Pipeline. *Id.* The majority opinion, however, held that the district court erred in granting summary judgment to Aquila because (1) the natural gas pipeline system is not "an improvement to real property under Minn. Stat. § 541.05, but an addition to the utility's distribution system," and (2) a prima facie case of negligence exists where an explosion is caused by a natural gas leak from a line owned by the utility, notwithstanding an absence of notice of the leak. *Id.* at 642–45. We subsequently granted Aquila's petition for further review.

On appeal, Aquila argues the court of appeals erred in concluding that (1) the

natural gas pipeline system is not "an improvement to real property" for the purpose of applying the 10–year statute of repose in Minn.Stat. § 541.051 and (2) the Minn.Stat. § 541.051, subd. 1(c), exception applied to respondents' claims because a prima facie case of negligence against Aquila had been established.

## I.

■■■ Summary judgment is proper where there are no genuine issues of material fact, and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. In so determining, this court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Offerdahl v. Univ. of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In addition, the construction and applicability of a statute of limitation or repose is a question of law subject to de novo review. *See Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn.1998).

■■ Minnesota Statutes § 541.051, subd. 1, provides, in pertinent part:

(a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property * * * arising out of the defective and unsafe condition of an improvement to real property * * * shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury * * * nor, in any event shall such cause of action accrue more than ten years after the substantial completion of the construction.

* * * *

(c) Nothing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession.

We turn first to the issue of whether the pipeline system constitutes an "improvement to real property" for purposes of applying repose periods in Minn.Stat. § 541.051, subd. 1(a). This court has adopted a common-sense interpretation of the phrase "improvement to real property." *See Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 451 (Minn.1988); *Pacific Indemnity Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 554 (Minn.1977). In *Pacific Indemnity Co.*, our court considered a dictionary definition of the phrase and defined an improvement as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." 260 N.W.2d at 554.

After carefully reviewing the record, we conclude that the natural gas pipeline system in question qualifies as "improvement to real property" as described by *Pacific Indemnity Co.* and *Sartori*.

First, the installation of the system involved more than 4,075 feet of new pipeline, valves, and fixtures, at a cost of more than $21,000, easily qualifying as a project involving "the expenditure of labor or money." Second, the complete abandonment of the existing propane steel pipeline system and the installation of a new natural gas polyethylene pipeline system that provided more than 10 years of maintenance-free service prior to the incident is not "ordinary repair," but rather represents, "a permanent addition to or betterment of real property," by any definition. *See Sartori*, 432 N.W.2d at 452 (holding that a crane that was fabricated on a mining facility and operating for 19 years qualifies as "a permanent addition to or betterment of real property"). Third, as the project's working order specifically stated, the installation of the natural gas pipeline system was due to the hazardous location of the existing steel pipeline system. While there is no specific evidence quantifying an increase in the capital value of Hallmark Terrace as a result of the gas system improvements, common sense indicates that replacing a hazardous propane system with a new, safer (if installed correctly), maintenance-free natural gas system increases the value of the real property the system serves. Respondents offered no contrary evidence, asserting only that the installation was an ordinary repair. As a result, the evidence in the record, while hardly overwhelming, supports the argument that the new natural gas system enhanced the capital value of Hallmark Terrace.

We note that, in reversing summary judgment to Aquila, the court of appeals majority concluded that the natural gas pipeline system was not "an improvement to real property" with respect to Aquila, but was "an improvement to real property" with respect to Northern Pipeline because the system was (1) owned and controlled by Aquila and (2) was part of Aquila's distribution system. *State Farm*, 697 N.W.2d at 637. But neither the relevant statutory language nor this court's interpretation of the phrase "improvement to real property" indicates a subjective analysis leading to different results for different owners. In other words, under the statute, an object is either an "improvement to real property" or it is not. The natural gas system at issue here is an improve-

ment to real property.[1]

■ We further note that for the statute of repose in Minn.Stat. § 541.051, subd. 1(a), to apply, the injuries that the respondents suffered must also arise out of "the defective and unsafe condition of an improvement to real property." Minn. Stat. § 541.051, subd. 1(c). Here, the evidence indicates that portions of the natural gas pipeline system were erroneously installed through a sewer line. Subsequently, while unclogging the sewer pipes, an auger struck and ruptured the intersecting gas pipeline, which resulted in a natural gas leak that led to the explosion and ensuing fire that destroyed several homes in Hallmark Terrace. Clearly, if all the pipelines were installed correctly, the cleaning of the sewage line would not have led to the gas leak. Therefore, as the district court correctly found, "the defective and unsafe placement of the pipeline system is causally related to the claimed damages." Accordingly, we conclude the incident in question and respondents' damages arose out of the dangerous and unsafe condition of an improvement to real property.

## II.

■ Having determined that respondents' claims for negligent installation of a natural-gas line pipe system are barred by the 10–year statute of repose in Minn.Stat. § 541.051, subd. 1(a), the next question we address is whether summary judgment is

appropriate on respondents' claims for negligent inspection, maintenance and repair of the natural gas pipeline system. The statute of repose does not apply to claims for negligence in the maintenance, operation or inspection of an improvement to real property. *See* Minn.Stat. § 541.051, subd. 1(c) (providing that the limitation and repose periods in section 541.051 do not apply "to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession").

Aquila argues that summary judgment is appropriate on these claims because respondents failed to come forward with any competent evidence supporting their allegations of negligent inspection, operation or maintenance. Respondents contend that the record contains sufficient evidence as to Aquila's negligence to raise a question of material fact with respect to the applicability of Minn.Stat. § 541.051, subd. 1(c).

■ We first address which party bears the evidentiary burden of establishing an exception to the application of the statute of repose. Generally, a party asserting a statute of limitation or repose as an affirmative defense bears the burden of proving all elements of the affirmative defense. *See Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn.1988). Respondents argue that because they allege that Aquila's negligence resulted in the gas explosion, Aqui-

1. Both the court of appeals majority opinion and respondents rely heavily on *Johnson v. Steele–Waseca Coop. Elec.*, in which the court of appeals concluded that electrical equipment owned by a regional utility, which was installed on a dairy farm, did not constitute an improvement. 469 N.W.2d 517, 520 (Minn.App.1991), *rev. denied* (Minn. July 24, 1991). We leave for another day the wisdom of applying *Johnson* to the statute at issue and note only that here *Johnson* is inapplicable.

As correctly recognized by the court of appeals dissent, the improvements at issue in *Johnson* allegedly causing injury were part of a larger distribution system installed for the benefit of the power cooperative. *Id.* at 519. In the present controversy, the improvements were designed entirely to serve the Hallmark Terrace properties, and whatever applicability *Johnson* may have to other circumstances, it is not helpful here.

la had the evidentiary burden of establishing not only the applicability of the statute of repose in Minn.Stat. § 541.051, subd. 1(a), but also the inapplicability of the exception to the statute of repose found in Minn.Stat. § 541.051, subd. 1(c), for negligent maintenance, operation, and inspection claims. This court has not specifically addressed the issue of which party bears the evidentiary burden of establishing an exception to the application of a statute of limitations or a statute of repose. Other courts, however, have held that "because statutes of limitation protect important interests of certainty, accuracy and repose," any exception to the statutes of limitation should be used "only in exceptional circumstances" and the burden of proving the exception lies with the parties who seek to claim the benefit of the exception. *Motley v. United States*, 295 F.3d 820, 824 (8th Cir.2002); *see also Baker v. F & F Inv.*, 420 F.2d 1191, 1198–99 (7th Cir.1970). This is a sensible approach and we adopt it. As a result, contrary to respondents' position at oral argument, Aquila did not have the burden of proof with respect to the applicability of the Minn.Stat. § 541.051, subd. 1(c), exception. In other words, to successfully pursue summary judgment under Minn.Stat. § 541.051, Aquila was required to demonstrate that the statute of repose found at Minn.Stat. § subd. 1(a) applied to Aquila by presenting evidence that the natural gas pipeline system qualified as "an improvement to real property" and that the incident in question rose out of the "defective and unsafe" condition of the system. Once Aquila had done so, however, the evidentiary burden shifted to respondents to prove that at least a question of material fact existed with respect to Aquila's negligence.

▮ Respondents assert that "the law imposes a higher standard of care for gas pipes owned and controlled by the utility provider." We have stated that a gas company must "exercise a degree of care to prevent the escape of gas proportionate to the danger which it is its duty to avoid." *Bellefuil v. Willmar Gas Co.*, 243 Minn. 123, 126, 66 N.W.2d 779, 782 (1954) (footnote omitted). A utility's duty to inspect does not require a system of inspection at all times, but only a duty to "make reasonable inspections." *Wilson v. Home Gas Co.*, 267 Minn. 162, 172, 125 N.W.2d 725, 732 (1964). "Notice that will trigger a gas supplier's duty exists where the supplier is in possession of facts that would suggest to a person of ordinary care and prudence that some part of the gas system is leaking or is otherwise unsafe for the transportation or use of gas." *Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746, 751 (Minn. 1980).

In the present controversy, respondents do not argue and the record does not indicate that Aquila was in possession of any facts suggesting that Northern Pipeline incorrectly or negligently installed the system. Respondents, however, contend that the record does contain sufficient evidence as to Aquila's negligence and a question of material fact exists with respect to the applicability of Minn.Stat. § 541.051, subd. 1(c).

▮ We have held that, upon a motion for summary judgment, an adverse party cannot preserve a right to trial on the merits merely by referring to "unverified or conclusory allegations" in the pleadings or by speculating about evidence that may be developed at trial. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) (quoting *Rosvall v. Provost*, 279 Minn. 119, 124, 155 N.W.2d 900, 904 (1968)). To raise a genuine issue of material fact that would necessitate a trial, a plaintiff must provide more than evidence merely creating a metaphysical doubt as to

a factual issue and that is not sufficiently probative with respect to an essential element of his case to permit reasonable people to draw different conclusions. *Gunderson v. Harrington*, 632 N.W.2d 695, 703 (Minn.2001).

■ The record shows that respondents' original complaint and amended complaint set forth the allegations that Aquila "owed a duty to exercise reasonable care in the inspection, maintenance, and/or repair of the natural-gas system at Hallmark Terrace," but that it "failed to exercise reasonable care and was negligent." Respondents additionally allege that Aquila was "negligent per se" in violating "applicable codes and standards regarding the inspection, maintenance, repair and/or installation of the natural-gas system." To support these claims, the complaints contained the following factual allegations:

At all times material herein, [Aquila] maintained control over the natural-gas line at the Hallmark Terrace Trailer Park.

* * * *

In November of 1990, [Aquila] contracted with Northern Pipeline to repair a portion of the existing natural-gas line at the Hallmark Terrace Trailer Park.

* * * *

While Northern Pipeline was repairing a portion of the natural-gas system at Hallmark Terrace, Northern Pipeline either bored or pushed the replacement gas line through the existing sewer line.

* * * *

While [Robert Sauer] was attempting to unclog the sewer pipes, [Sauer] struck and ruptured the natural-gas line at Hallmark Terrace with [his] trap-and-drain auger or "snake," causing natural-gas to migrate through the sewer piping and enter into the manufactured homes

at Hallmark Terrace where the gas began to build up in large quantities.

Beyond these sparse factual allegations, the record contains very little additional factual support for respondents' negligence claims. Respondents stated during oral argument that the facts that would raise a question of material fact regarding the applicability of the Minn.Stat. § 541.051, subd. 1(c), exception were: (1) a gas explosion occurred from a natural gas pipeline system owned and controlled by Aquila, (2) one of the gas pipelines was installed incorrectly, and (3) Aquila failed to inspect, service, or maintain the pipeline prior to the incident. But viewed in the light most favorable to respondents, these facts are not "sufficiently probative" to establish a prima facie case of liability.

We stated in *Lubbers*, " 'The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury.' " 539 N.W.2d at 401 (quoting *Schmanski v. Church of St. Casimir*, 243 Minn. 289, 292, 67 N.W.2d 644, 646 (1954)). Here, despite the allegation that Aquila owed a duty of reasonable care and had failed to exercise such a duty, the record contains no evidence that a duty of reasonable care existed and how Aquila breached such a duty.

Respondents do not allege that Aquila had a duty to conduct an independent inspection of Northern Pipeline's work that would have allowed Aquila to discover the incorrect installation. Similarly, respondents failed to establish that Aquila had a duty to perform maintenance at some point prior to the incident and that any such maintenance would have found the defect at issue.

■ A similar deficiency also exists with respect to respondents' negligence per se claim. Despite the allegation that

Aquila had "violated NFPA and other applicable codes and standards regarding the inspection, maintenance, repair and/or installation of the natural[-]gas system," respondents failed to provide any statutory provision, code, or industry standard against which Aquila might have been held negligent. As such, respondents' allegations are mere averments and are not sufficient to survive summary judgment. Put another way, plaintiffs failed in their evidentiary burden to successfully raise a jury question as to the applicability of the Minn.Stat. § 541.051, subd. 1(c), exception.

■ Last, we note that the court of appeals held that a prima facie case of negligence against Aquila existed because "gas does not escape from pipelines if those responsible exercise proper care." *State Farm*, 697 N.W.2d at 643. The court further concluded that because "Aquila owned and controlled the pipeline, * * * the fact that Aquila never received notice of a defect or dangerous condition in its line does not defeat [respondent's] negligence claim." In so concluding, the court cited our comment in *Wilson*, where we stated that in previous cases such as *Manning v. St. Paul Gaslight Co.*, 129 Minn. 55, 151 N.W. 423 (1915), our court has "applied a strict rule of liability when gas escapes from a pipe over which the [gas] company has control and for which it is responsible." *Wilson*, 267 Minn. at 173, 125 N.W.2d at 732. The court's reliance on *Wilson* is misplaced. *Wilson* dealt with a gas leak of unknown origin, and those are not the circumstances at issue here. Instead, the escape of the gas was caused by the puncture of the pipeline by a third party, Sauer, and it is undisputed that there were no problems with the pipeline until Sauer punctured it in 2002. We decline to extend *Wilson* to circumstances, such as here, where others are responsible for the leak. *See Wilson*, 267 Minn. at

172, 125 N.W.2d at 732 (noting that a gas supplier is not an insurer for those suffering loss from a gas leak). *Wilson*, 267 Minn. at 172, 125 N.W.2d at 732. *Wilson*, in the content of this case, is inapplicable.

Reversed.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.