RAM MUTUAL INSURANCE COMPANY, Appellant,

v.

Daniel MEYER and Linda Meyer, individually and as parents of Shawn Meyer, a minor, Respondents,

Judith Nietfeld and Brian Nietfeld, individually and as parents of Curtis Nietfeld, a minor, Respondents,

Paynesville Independent School District No. 741, Respondent.

No. A08–0864.

Court of Appeals of Minnesota.

July 21, 2009.

William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for appellant.

John T. Lund, Lund Kain & Scott, P.A., St. Cloud, MN, for respondents Meyers.

John E. Mack, Mack & Daby, P.A., New London, MN, for respondents Nietfelds.

Kenneth H. Bayliss, Laura A. Moehrle, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondent school district.

Charles A. Bird, Bird, Jacobsen & Stevens, P.C., Rochester, MN, for Amicus Curiae Minn. Assoc. for Justice.

Considered and decided by MINGE, Presiding Judge; TOUSSAINT, Chief Judge; and COLLINS, Judge.*

## OPINION

MINGE, Judge.

Appellant insurer challenges the district court's determination that its policy provides coverage for the serious injuries caused by an insured, arguing that (1) the policy does not cover the claim because the event that caused the injury was not an "occurrence"; (2) the policy contains an intentional-act exclusion that bars coverage for the claim; and (3) the district court erred in the wording of a special-verdict question that asked whether the insured knew or had reason to know that a "significant harm" would result from his actions. We affirm.

## FACTS

In May 2005, Shawn Meyer and Curtis Nietfeld were students in a high school shop class. Meyer pulled a shop stool out from under Nietfeld as a practical joke, causing Nietfeld to fall to the floor. When Nietfeld got up, he grabbed the stool and held it up or shook it at Meyer, apparently in a joking manner. Meyer then briefly chased Nietfeld and either grabbed him from behind or tripped him. Following that contact, Nietfeld fell to the concrete floor, striking his head and suffering injuries. According to multiple witnesses, Meyer appeared to be trying to stop Nietfeld or knock him down but did not appear to be trying to injure him. Meyer testified that he was just trying to pull Nietfeld toward him, not down, that he was not trying to hurt him, and that he did not think that there was any possibility that Nietfeld would be hurt. One witness testified that the entire incident lasted about eight seconds. Multiple eyewitnesses, including Nietfeld, suggested that the boys were "screwing around like they usually do," not fighting, and stated that the situation "seemed like it was kind of a joke" that "got taken past a joke." The record indicates the two boys were long-term friends who played and sometimes roughhoused together.

Nietfeld and his parents sued the Meyers and the school district for Nietfeld's injuries, alleging assault and negligence. At the time of the incident, Meyer's family had a homeowner's liability-insurance policy with appellant RAM Mutual Insurance Company. Appellant brought a declaratory-judgment action to determine its rights and obligations. Appellant asserted that there was not coverage for two reasons. First, it argued that the policy only covers bodily injuries caused by an "occurrence," and that an occurrence was defined as "an accident which is neither expected nor intended." Second, it argued that the policy excluded intentional acts with the following clause: "This policy does not apply to liability which results directly or indirectly from ... any act intended by an insured ... whether or not the bodily injury or property damage was intended[.]"

A jury was empanelled, and the district court asked it a single question: "Did Shawn Meyer know, or have reason to know, that a significant harm was substantially certain to result when he grabbed and/or tripped Curtis Nietfeld?" The jury answered the question in the negative. The district court then determined that,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

because there was no intent to injure Nietfeld, appellant's insurance policy covered Nietfeld's injuries. After the trial, appellant moved the district court for judgment as a matter of law or, alternatively, for a new trial. Both motions were denied. This appeal follows.

### ISSUES

I. Was the incident an "occurrence" under the insurance policy?

II. Is coverage barred because of the policy's intentional-act exclusion?

III. Did the district court abuse its discretion in asking a special-verdict question that inquired whether Meyer intended to cause "significant harm?"

### ANALYSIS

■■■ The interpretation of insurance-contract language is a question of law subject to de novo review. *State Farm Fire & Cas. Co. v. Schwich,* 749 N.W.2d 108, 111 (Minn.App.2008). When construing an insurance contract, we give words their natural and ordinary meaning and resolve any ambiguity in favor of the insured. *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 609 (Minn.2001). We resolve ambiguity by interpreting the ambiguity in accordance with the reasonable expectations of the insured. *Carlson v. Allstate Ins. Co.,* 749 N.W.2d 41, 47–48 (Minn. 2008). Only in exceptional circumstances, when a policy is ambiguous and coverage is significantly different from what is reasonably expected, and sufficient notice of this difference is lacking, should the reasonable-expectation doctrine apply. *Id.* at 49. Furthermore, courts should be vigilant against finding ambiguity when none actually exists. *Marchio v. W. Nat'l Mut. Ins. Co.,* 747 N.W.2d 376, 380 (Minn.App. 2008).

### I.

■■■ The first issue is whether the incident was an occurrence. The policy defines an occurrence as "an accident which is neither expected nor intended." The policy does not define the term "accident." The Minnesota Supreme Court, after a thorough analysis, defined the term "accident" as "an unexpected, unforeseen, or undesigned happening *or consequence.*" *Walser,* 628 N.W.2d at 611 (emphasis added). The court held that the word "accident" encompasses both the acts of the insured and the consequences of the insured's acts. *Id.* "[W]here there is no intent to injure, the incident is an accident, even if the conduct itself was intentional." *Id.* at 612. Thus, in deciding whether an incident is an accident, the finder of fact must consider whether the insured acted with specific intent to injure. *Id.* If an insured does not act with specific intent to injure, then the incident is an accident under *Walser.* Lack of specific intent is determinative. *Id.*

■■■ There are two main ways that an insurer may establish intent to injure and lack of coverage. First, an insurer may offer proof of actual intent to injure. *Schwich,* 749 N.W.2d at 112. In *Walser,* the insured intended the act (pulling a fellow student who was hanging on the rim of a basketball hoop), and the injury was the natural and probable consequence of the insured's actions. 628 N.W.2d at 613–14. The supreme court concluded that the resulting injury was unintended or unexpected, and thus not intentional; therefore, the injury was covered under the policy. *Id.* at 612–13. Second, "an insurer may prove intent to injure by inferring intent as a matter of law." *Schwich,* 749 N.W.2d at 112. "The general rule is that intent is inferred as a matter of law when the nature and circumstances of the insured's act are such that harm is substan-

tially certain to result." *B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817, 822 (Minn.2003) (quotation omitted). "Generally, courts infer intent to injure as a matter of law when the injury involves a criminal act of a serious nature." *Schwich,* 749 N.W.2d at 112 (citing cases involving violent criminal acts).

Appellant attempts to characterize Meyer's actions as intentional (and, thus, not accidental) by noting that, in Nietfeld's underlying complaint, Meyer's conduct is characterized as willful and malicious. However, when Nietfeld testified under oath at trial, he straightforwardly rejected the language of his own complaint by stating that he did not believe Meyer's conduct was willful or malicious and that, if he had not hit his head on the floor, he would have considered the incident to be "screwing around just like any other day." The jury found that Meyer did not intend the severe injuries Nietfeld received, and the district court found that the jury's verdict meant that "the incident was an accident."

Because the word "accident" is defined to include unintended consequences of an insured's actions, because the testimony of witnesses overwhelmingly supports the conclusion that the boys were engaged in horseplay and that Nietfeld's injuries were not intended, because the jury determined that Meyer did not intend to cause significant harm to Nietfeld, because appellant mostly relies on the strident language in the underlying complaint, and because Nietfeld clearly disavowed that language in the complaint, we conclude that this event was an accident and an occurrence covered by the policy issued by appellant.

## II.

The second issue is whether coverage is barred because of the wording of the policy's intentional-act exclusion. Exclusions from insurance coverage "are construed narrowly and strictly against the insurer and, like coverage, in accordance with the expectations of the insured." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (citation omitted). The supreme court has determined that, for purposes of the intentional-act exclusion found in most liability insurance policies, conduct is intentional only when there is *specific intent to cause injury.* *Walser,* 628 N.W.2d at 613; *Schwich,* 749 N.W.2d at 112. "[T]he purpose of intentional act exclusions is to exclude insurance coverage for wanton and malicious acts by an insured." *Walser,* 628 N.W.2d at 613. This view of the intentional-act exclusion in insurance policies is well-aligned with the views of other jurisdictions. *See generally* 7A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 103:25 (3d ed. 2005).[1] Consequently, for the intentional-act exclusion to apply, we

---

1. *Couch on Insurance* states:
    In the context of liability insurance, the word intent is used to denote that the actor desires to cause the consequences of his act or believe that some consequences are substantially certain to result from his act. Where damages that result from an intentional act are only such that the insured would consider them to have been an appreciable risk that they would occur, they are not considered intentional damages for purposes of the exclusion; in order for damages to be intended, they must be substantially certain to result from the act of insured.

*Couch on Insurance, supra,* § 103:25 (footnotes omitted); *see also* 12 Am.Jur. Proof of Facts 3d 505 § 5 (1991) (stating that "[i]t cannot be overemphasized" that, for an intentional-act exclusion to apply, the insured must act with the intent or expectation that harm will result from his actions and stating that "[t]o exclude intentional acts by themselves, with no consideration given to the presence or absence of an intent to cause bodily injury or property damage, would often mean excluding coverage under the insurance policy for acts amounting to nothing more than negligence").

look to whether the insured specifically intended to cause injury. This is essentially the same question we addressed in the first issue. Not surprisingly, we have stated that "[t]he questions of whether an injury is the result of an accident and whether coverage is excluded because the injury is the result of an intentional act are for all practical purposes, identical issues." *Schwich,* 749 N.W.2d at 112 (quotation omitted).

▮ Appellant points out that its policy language is unique and materially different from the usual policy provision such as that considered in *Walser* and, as a result, argues that the rule from *Walser* should not apply. The intentional-act exclusion in *Walser* stated, "We will not pay for damages due to bodily injury or property damage expected or intended from the standpoint of the insured." *Walser,* 628 N.W.2d at 609. Appellant's policy excludes liability coverage for "any act intended by an insured ... whether or not the bodily injury or property damage was intended." On appeal, appellant essentially argues that, under its policy, it does not matter whether the insured has specific intent to injure; the only issue is whether the insured's act was *voluntary.* Appellant states that, under the policy, "any intentional act by an insured is excluded regardless of whether or not any harm was intended" and, thus, coverage is excluded here because, regardless of whether Meyer intended to cause harm, "Meyer acted intentionally in chasing Nietfeld and grabb[ing] and/or tripp[ing] him."

The court in *Walser* did not limit its analysis to the provision in that case and spoke generally of intentional-act exclusions when it stated that "lack of specific intent to injure will be determinative," and that "the purpose of intentional act exclusions is to exclude insurance coverage for wanton and malicious acts by an insured." *Id.* at 612–13. Moreover, appellant's inter-

pretation of its intentional-acts exclusion would preclude coverage for any conscious or voluntary conduct by the insured. This would narrow Minnesota's longstanding understanding of the use of the word "intent" in insurance policies. *See Schwich,* 749 N.W.2d at 112; *see also Walser,* 628 N.W.2d at 611–12; *R.W. v. T.F.,* 528 N.W.2d 869, 872 (Minn.1995) ("The law in Minnesota is well-settled that an intentional act exclusion applies only where the insured acts with a specific intent to cause bodily harm. Specifically, the requisite intent demands that the insured intended the harm itself, not merely that the insured generally intended to act.") (citations omitted). Because very few acts are purely involuntary, accepting appellant's interpretation would produce far reaching consequences. The insuring clause in the liability policy would be overwhelmed by the exclusion because most "accidents" are the result of at least nominally "intentional" acts. We cut a tree down, and it falls on someone's car. We drive too fast and run off the road. We decide not to buy a heavy-duty extension cord, and a fire occurs. Although we call the resulting damage an "accident," our risky conduct is usually the result of a nominally deliberate decision.

We do not ignore the specific wording of appellant's exclusion. However, we note that appellant's interpretation of its exclusion would dramatically limit coverage and that by ignoring consequences, the policy redefines "intent" contrary to the standard jury·instruction. *See* 4A *Minnesota Practice,* CIVJIG 60.10 (2006). As discussed below, appellant even requested a special-jury question that made intent to cause consequences a central consideration for the jury. This apparent inconsistency between appellant's position at trial and on appeal illustrates the difficulty appellant and the courts face with the application of the policy language. In sum, appellant's

position creates uncertainty regarding the meaning of the word "intend." This uncertainty is a type of ambiguity that we resolve by reviewing the rest of the insurance policy and the reasonable expectations of the insured. Minnesota courts have a longstanding policy of interpreting insurance exclusions narrowly, *Travelers,* 718 N.W.2d at 894, and of construing contracts in a manner that avoids absurd and unjust results, *Mead v. Seaboard Sur. Co.,* 198 Minn. 476, 478, 270 N.W. 563, 565 (1936). It would be absurd to purchase a liability-insurance policy which excludes coverage for any injury derived from one's voluntary but nominally intentional conduct.

By its elimination of the consideration of consequences, the exclusionary language in this policy focuses our analysis on the nature of the "occurrence," which triggers coverage, and the nature of the "intentional" act, which triggers the exclusion. The policy covers "occurrences," which we have determined, by definition, are incidents where an injury is caused by accidental—that is, unintentional—conduct. The exclusion appears aimed at specific intent to do something that is wrongful regardless of injury.

We reject appellant's open-ended interpretation of the policy exclusion that would eliminate coverage for nominally intentional conduct. Rather, it is more reasonable to read the exclusion as eliminating coverage for those occurrences in which the insured's act is so wrongful, willful and egregious or the anticipated injury is so obvious that the injury cannot be called "accidental." If we use this definition of "intent," we avoid an exclusionary clause that would swallow the insuring clause of the policy. As so read, the exclusion, like the insuring clause, allows coverage in situations where the insured's intent to act is general and lacks the wrongful, willful or egregious quality. We also recognize that,

although the policy exclusion states that intent to injure is irrelevant, that dimension of intent invariably comes into consideration in trying to determine the willfulness or egregiousness of the conduct.

Here, we conclude that Meyer did not act with the requisite willfulness and egregiousness to trip or cause the fall of a friend. He was an adolescent engaged in regrettable horseplay. Because this is not "intentional" such that the act was not an "occurrence" or an "accident," we further conclude that the intentional-act exclusion in appellant's policy does not bar coverage.

**III.**

The third issue is whether the district court abused its discretion in asking a special-verdict question that inquired whether Meyer intended to cause "significant harm." Appellate courts will not reverse a district court's decision regarding the choice of jury instructions unless the instructions constituted an abuse of discretion. *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986). "District courts are allowed considerable latitude in selecting language used in the jury charge and determining the propriety of a specific instruction." *Morlock v. St. Paul Guardian Ins. Co.,* 650 N.W.2d 154, 159 (Minn.2002); *see also Russell v. Johnson,* 608 N.W.2d 895, 898 (Minn.App.2000) (providing district courts broad discretion in drafting special verdict questions), *review denied* (Minn. June 27, 2000).

[A] court errs if it gives a jury instruction that materially misstates the law. If an erroneous jury instruction destroys the substantial correctness of the charge, causes a miscarriage of justice, or results in substantial prejudice, a new trial is warranted. An error is prejudicial if there is a reasonable likelihood that the giving of the instruction in question would have had a significant

effect on the verdict of the jury. If a jury instruction is erroneous and an appellate court is unable to determine whether the error affected the jury, a new trial should be granted.

*Youngquist v. W. Nat'l Mut. Ins. Co.*, 716 N.W.2d 383, 385–86 (Minn.App.2006) (quotations and citations omitted).

The overriding questions of fact were whether the incident was an "accident" and whether it fell within the intentional-act exclusion. The Minnesota Civil Jury Instruction defining intent states that: " 'intent' or 'intentionally' means that a person: 1. Wants to cause the consequences of his or her acts, or 2. Knows that his or her acts are substantially certain to cause those consequences." CIVJIG 60.10. The jury was asked a single question: "Did Shawn Meyer know, or have reason to know, that a significant harm was substantially certain to result when he grabbed and/or tripped Curtis Nietfeld?"

The record indicates that the wording of the special-verdict question resulted from what the district court characterized as some interesting, somewhat animated conversations off the record. Outside the presence of the jury, the district court told the parties that the fact issue was whether there was an intentional or a negligent act. Appellant argued for a special-verdict question that asked the jury two questions. Ultimately, one was proposed, whether "Shawn Meyer knew or should have known *a harm* was substantially certain to result from his conduct." [2] (Emphasis added). The district court determined it was appropriate to modify the word "harm" because Minnesota caselaw had repeatedly found that intentional-act-exclusion language cannot be triggered by simple physical contact that may cause mild discomfort or pain. Appellant had argued that, if a modifying adjective had to be used, the word "some" was better and less prone to magnify its burden of proof as the insurer than the word "significant." The district court compared the impact of the adjectives "some," "significant," and "substantial." According to the district court, the term "significant" was most appropriate and required only "an intent to cause a harm that is more than an 'insignificant' harm such as a tap on the shoulder, a pat on the back, or playfully grabbing another's ankles." The district court rejected appellant's argument that the term "significant harm" would imply that a "substantial" or "serious" harm had to be intended.

While taking special note that this case involved apparent horseplay between two boys and that the special-verdict questions requested by appellant asked the jury to find whether "a harm" was intended, we conclude that the case law recognizes the district court's discretion in framing the fact question for the jury. In *Caspersen v. Webber*, the insured intentionally pushed a hatcheck attendant against a wall when she refused to allow the insured to enter the coat room without a claim check, and the court determined that the intentional-act exclusion did not apply because the insured did not intend to injure the hatcheck girl, despite the fact that the push was nominally intentional. 298 Minn. 93, 213 N.W.2d 327, 330 (1973). In *Gilman v. State Farm Fire & Cas. Co.*, a jury determined that the insured did not intend to injure his friend, even though he tackled him to prevent him from leaving a party. 526 N.W.2d 378, 381 (Minn.App.1995). In *Walser*, a boy grabbed his friend's ankles and forcefully pulled to dislodge his hold

---

**2.** Appellant's requested instruction was essentially an agreement that Meyer's intent to cause harm was relevant to the issue of coverage and the intentional-act exclusion. As noted in our discussion of the intentional-act exclusion, appellant now argues that Meyer's intent to injure was irrelevant.

on a basketball hoop, and the supreme court found that the boy did not have the specific intent to harm his friend and therefore the intentional-act exclusion did not apply. 628 N.W.2d at 613. In all of these cases, the insured individuals nominally intended to push, pull, or tackle the injured party, and these actions involved contact that could reasonably be expected to cause pain, discomfort, embarrassment, any of which could be considered "harm." However, as these cases indicate, these harms are not the type that must be intended to fall within an intentional-act exclusion.

Historically, the intentional-act exclusion has been applied to blatant acts that involve intent to cause more than an insignificant harm. *See, e.g., Woida v. N. Star Mut. Ins. Co.,* 306 N.W.2d 570, 573 (Minn. 1981) (shooting at an occupied truck with a high-powered rifle); *Continental W. Ins. Co. v. Toal,* 309 Minn. 169, 177, 244 N.W.2d 121, 126 (Minn.1976) (armed robbery); *State Farm Fire & Cas. Co. v. Neises,* 598 N.W.2d 709, 712 (Minn.App. 1999) (disinterring, dismembering, and displaying a child's corpse), *review denied* (Minn. Nov. 17, 1999); *Auto–Owners Ins. Co. v. Smith,* 376 N.W.2d 506, 510 (Minn. App.1985) (firing a gun into an occupied home), *review denied* (Minn. Jan. 17, 1986).

It is clear that the inclusion of the word "significant" was an effort by the district court to distinguish the sort of harms produced in juvenile horseplay from the type of significant harms caused in a typical physical assault, the type of intentional act that intentional-act provisions in insurance contracts are designed to exclude from coverage. Although given the language of the intentional-act exclusion in the RAM Mutual policy, the question may have been irrelevant, the district court framed the question with appellant's participation. Appellant acquiesced to the use of a jury

and the submission of a question dealing with the broad subject of consequences. In this circumstance, we conclude that the district court's use of this special-verdict question was not an abuse of its discretion.

## DECISION

Because we hold that Meyer's conduct was an occurrence under the policy, because coverage was not precluded by the policy's intentional-act exclusion, and because the district court's special-verdict question was not an abuse of its discretion, we affirm.

**Affirmed.**