# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2241

_____

| | | |
|---|---|---|
| Minch Family LLLP, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Estate of Gladys I. Norby; Robert | * | |
| N. Norby, Individually and as | * | |
| Personal Representative of the | * | |
| Estate of Gladys I. Norby, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 15, 2011
Filed: August 29, 2011

_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Minch Family LLLP ("Minch Family") sued the Estate of Gladys I. Norby and Robert N. Norby (collectively, "the Norbys") in diversity, seeking injunctive relief and damages for flooding of the Minch Family's property, allegedly caused by a field dike built on the Norbys' land. The magistrate judge[1] denied the Minch Family's motion to

_____

[1]The Honorable Raymond L. Erickson, then Chief Magistrate Judge for the District of Minnesota, sitting to hear these pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

amend its complaint to add a claim for punitive damages and its motion to amend the court's scheduling order. Thereafter, the district court[2] granted the Norbys' motion for summary judgment, concluding that the applicable statute of limitations barred the Minch Family's claims. The Minch Family appeals, arguing that the district court erred in concluding that its claims were time-barred and that the magistrate judge abused his discretion by denying its motion to amend its complaint and its motion to amend the scheduling order. For the following reasons, we affirm.

I. *Background*

For many years, the Minch Family, a North Dakota limited liability limited partnership, and the Norbys, Minnesota residents, have owned adjoining parcels of farmland in Clay County, Minnesota, near the Buffalo and Red Rivers. An L-shaped field dike on the Norbys' property borders the Minch Family's property. The evidence suggests that the field dike was constructed as early as the 1950s. Since 2000, heavy rainfall or snow melt has occasionally caused flooding on the Minch Family's property. The Minch Family claims that the field dike interrupts the natural flow of water and causes water to back up onto the Minch Family's property. The Norbys contend that the flooding is caused by the Minch Family's failure to clean and maintain a drainage ditch on the Minch Family's property.

Both properties are situated within the jurisdiction of the Buffalo-Red River Watershed District (BRRWD). Following a flood in the fall of 2000, the Minch Family complained to the BRRWD that the Norbys' field dike interrupted the drainage of water and thus caused the flooding of the Minch Family's property. BRRWD records indicate that in the spring of 2001, the area flooded again, causing a "washout" in the field dike. Thereafter, Robert Norby repaired the field dike without BRRWD approval. The BRRWD and the Minch Family believed that, when making these

---

[2]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

repairs, Robert Norby increased the height of the field dike. Throughout this time, the Minch Family continued to raise their concerns at BRRWD public meetings about drainage problems that the field dike caused. In June 2004, the Minch Family notified the BRRWD, at a public meeting, that recent flooding caused the Minch Family crop and dollar losses. The Minch Family again alleged that the Norbys' field dike caused the flooding.

On September 7, 2007, the BRRWD informed the Minch Family that it would refrain from taking any further action over the field dike on the Norbys' property. On October 14, 2008, the Minch Family commenced the instant action by filing a complaint in the district court. The complaint alleged that Robert Norby had wrongfully altered a natural drainage way and violated the reasonable-use doctrine; the complaint also asserted claims for trespass, nuisance, strict liability, and deliberate disregard for the Minch Family's rights. All of the claims arose from Robert Norby's construction, maintenance, and repair of the field dike, which prevented water drainage and caused flooding on the Minch Family's property.

On February 25, 2009, the district court entered a pretrial scheduling order, pursuant to Federal Rule of Civil Procedure 16, setting the deadline to amend the pleadings for June 1, 2009. On May 1, 2009, the Minch Family filed a motion to amend its complaint to allege a claim for punitive damages. While that motion was pending, on June 1, 2009, the Minch Family filed a motion to amend the pretrial scheduling order to extend the deadline for amending the pleadings until October 1, 2009. The Minch Family argued that it needed additional time to conduct discovery in support of its claim for punitive damages. The magistrate judge denied the Minch Family's motion to amend the pretrial scheduling order because the Minch Family had failed to show good cause for its inability to meet the original deadline to amend its complaint. Shortly thereafter, the magistrate judge denied the Minch Family's motion to amend its complaint to allege a claim for punitive damages, concluding that the

Minch Family had failed to make a prima facie showing that it was entitled to seek punitive damages under Minnesota law.

The parties subsequently filed cross-motions for summary judgment. The district court granted the Norbys' motion and denied the Minch Family's motion, concluding that the Minch Family's claims were barred by the two-year statute of limitations contained in Minnesota Statutes § 541.051.

## II. *Discussion*

On appeal, the Minch Family argues that the district court erred in concluding that its claims were time-barred. In addition, the Minch Family asserts that the magistrate judge abused its discretion in denying the Minch Family's motion to amend its complaint and its motion to amend the scheduling order. We review each argument in turn.

## A. *Statute of Limitations*

The Minch Family argues that the district court erroneously concluded that the Minch Family's claims were barred by the two-year statute of limitations contained in § 541.051. First, the Minch Family contends that the 15-year statute of limitations for adverse possession under Minnesota Statutes § 541.02 should apply instead because the flooding "seized" the Minch Family of its possession and use of its land. In order to have § 541.02 apply, the Minch Family relies on the private-nuisance-by-prescription defense that the Norbys assert in their answer.

Second, the Minch Family contends that the two-year statute of limitations under § 541.051 does not apply. Section 541.051 is the applicable statute for defective real property improvements. The Minch Family maintains that the field dike is not an "improvement to real property," nor is it "defective" because it is operating as the Norbys intended it to operate. The Minch Family argues that its nuisance and reasonable-use-doctrine claims are grounded in negligence and, therefore, subject to

the exception under § 541.051, subdivision 1(d). Likewise, the Minch Family asserts that the two-year period applies to claims seeking only money damages and not to claims seeking injunctive relief, which the Minch Family also seeks. Finally, the Minch Family contends that even if the six-year period under § 541.05 applies, its claim is not barred because it did not suffer "significant and calculable actual crop damage" until 2004.

The Minch Family raises alternative arguments to avoid application of the two-year period under § 541.051. Specifically, the Minch Family argues that the flooding the field dike caused constitutes a continuing trespass, causing injuries to the Minch Family as late as 2008. The Minch Family maintains that the district court erred by concluding that no continuing trespass existed because the court did not look to the nature of the wrong the Minch Family sought to remedy—the repeated flooding. It contends that the wrong was *not* the construction of the dike itself. Second, even absent a continuing trespass, the Minch Family argues that the statute of limitations was tolled while it sought administrative remedies from the BRRWD. The Minch Family asserts that once it notified the BRRWD of the flooding in 2000 or 2001, the BRRWD took exclusive jurisdiction over the issue and did not release its jurisdiction until September 7, 2007.

We review de novo the district court's grant of summary judgment. *Walnut Grove Partners, L.P. v. Am. Family Mut. Ins. Co.*, 479 F.3d 949, 951 (8th Cir. 2007). In doing so, we apply the same standard as the district court and view the record in the light most favorable to the nonmoving party. *Id.* Thus, "[s]ummary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law." *Id.* at 951–52 (quotation and citation omitted).

Since federal jurisdiction is based on diversity of jurisdiction, we apply Minnesota substantive law, including Minnesota's applicable statutes of limitations. *Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 495

(8th Cir. 2004). Under Minnesota law, a defendant seeking to apply the statute of limitations "bears the burden of establishing that the claims are time-barred as a matter of law." *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 495 (Minn. Ct. App. 2003) (citing *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988)).

### 1. *Applicable Statute of Limitations*

As in the district court, the parties on appeal set forth three different potentially applicable limitations for the Minch Family's claims. Thus, we will examine each statute to determine which one controls.

The longest period the Minch Family seeks, Minnesota Statutes § 541.02's 15-year limitations period, does not apply to their claims. Section 541.02, by its terms, applies to "action[s] for the recovery of real estate or the possession thereof." It does not apply to actions for damages and injunctive relief, which the Minch Family seeks. Moreover, the fact that the Norbys have argued, in their answer to the Minch Family's complaint, that they acquired a prescriptive easement does not convert the Minch Family's claims into an action governed by § 541.02.

In the absence of another statute of limitations, the six-year period in Minnesota Statutes § 541.05 would apply to some, if not all, of the Minch Family's claims. Section 541.05, subdivision 1(2), covers claims for trespass and "liabilit[ies] created by statute." Thus, the Minch Family's claims for trespass and nuisance, "a liability created by" Minnesota Statutes § 561.01, would appear to be subject to the six-year statute of limitations. Notwithstanding, we agree with the district court that the two-year statute of limitations, pursuant to § 541.051, applies to all of the Minch Family's claims because the claims arise from an "improvement to real property," the field dike. Section 541.051, subdivision 1(a), provides:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or

personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought . . . more than two years after discovery of the injury . . . .

Adopting a "common-sense interpretation of the phrase 'improvement to real property,'" the Minnesota Supreme Court has defined the term as "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *State Farm Fire & Cas. v. Aquila Inc.*, 718 N.W.2d 879, 884 (Minn. 2006) (quotations and citations omitted).

Applying this definition, we conclude that the Norbys' field dike is an improvement to real property under Minnesota law. The record reflects that the field dike has been in place on the Norbys' property, in some form, for decades. Damage to the dike during a "wash out" did not convert it to a temporary, as opposed to permanent, structure. In addition, the field dike was obviously constructed to make the Norbys' property more valuable and useful, as it is intended to avoid excess water flow to the property. Finally, its construction almost certainly involved the "expenditure of labor or money." *Cf. Nelson v. Short-Elliot-Hendrickson, Inc.*, 716 N.W.2d 394, 401 (Minn. Ct. App. 2004) (finding that a sedimentation pond was an improvement to real property and noting that Minnesota courts have consistently found that storm-sewer systems are an improvement to real property).

The Minch Family counters that the field dike cannot be an improvement to real property because the Norbys' never surrendered control over the field dike, citing *Johnson v. Steele-Waseca Coop. Elec.*, 469 N.W.2d 517, 519–20 (Minn. Ct. App. 1991). The Minnesota Supreme Court, however, has clearly indicated that whether an object is an "improvement to real property" has nothing to do with its ownership or control. *State Farm*, 718 N.W.2d at 884. As the court has explained, "an object is

either an 'improvement to real property' or it is not." *Id.* Under the Minnesota Supreme Court's definition of the term, the field dike is an "improvement to real property."

Moreover, the Minch Family's claims arise from the "defective and unsafe condition" of the field dike. The Minnesota Supreme Court has explained that the individual facts and circumstances of the case will determine whether a claim arises out of a defective and unsafe condition. *Griebel v. Andersen Corp.*, 489 N.W.2d 521, 523 (Minn. 1992). "An improvement to real property is deemed defective and unsafe if it is incomplete, faulty, dangerous, and/or insecure." *Nolan & Nolan*, 673 N.W.2d at 496. Here, whether the Norbys knew or intended it, the field dike caused flooding to the Minch Family's property; such flooding is likely "faulty" or "dangerous," even if not from the Norbys' perspective. *See id.* (finding that flooding caused by a storm-sewer system was a defective and unsafe condition); *cf. State Farm*, 718 N.W.2d at 884 (noting that application of the statute does depend on "a subjective analysis leading to different results for different owners").

Additionally, the Minch Family's claims do not fall under the exception to the two-year limitations period. Section 541.051, subdivision 1(d), provides that "actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement" are not subject to the two-year statute of limitations. The plaintiff bears the burden of establishing this exception to the statute of limitations, which "should be used only in exceptional circumstances." *State Farm*, 718 N.W.2d at 886 (quotation and citation omitted).

The Minch Family has failed to meet this burden. It has not alleged any claims of negligence on the Norbys' part. Instead, the Minch Family asserts that its nuisance and reasonable-use-doctrine claims are "grounded" in negligence. To the contrary, under Minnesota law, "[a]lthough negligence may be the cause of a nuisance, it is not necessarily an element of a nuisance action." *Highview N. Apartments v. Cnty. of Ramsey*, 323 N.W.2d 65, 71 (Minn. 1982). Similarly, the idea of "reasonable use," in

the reasonable use doctrine, "is not to be confused with 'reasonable care,' a negligence concept." *Id.* at 72. None of the Minch Family's claims set forth any of the elements of a negligence claim. *Cf. State Farm*, 718 N.W.2d at 887 (holding that the exception did not apply where complaint alleged that defendant owed a duty but record contained no evidence that the duty existed or that defendant had breached it). Equally important, the Minch Family's complaint does not allege damages arising from the Norbys' *maintenance*, *operation*, or *inspection* of the field dike; it simply alleges that the very existence of the field dike blocks drainage and causes flooding. Accordingly, the Minch Family has not shown that the statutory exception to the two-year limitations period should apply.

Finally, the two-year statute of limitations under § 541.051 applies not only to the Minch Family's claims for damages, but also to its claims for equitable relief. The statute itself only mentions claims "to recover damages." Minn. Stat. § 541.051, subdiv. 1(a). It is silent on the issue of claims for equitable relief. Nonetheless, the Minnesota Supreme Court, in a recent decision, examined whether claims for damages *and* injunctive relief were untimely under § 541.051—without considering whether the claims for injunctive relief were subject to a different limitations period. *Siewert v. N. States Power Co.*, 793 N.W.2d 272, 276, 286–88 (Minn. 2011). In fact, the court held that certain "claims for injunctive relief" were not subject to the exception under § 541.051, subdivision 1(d), and were barred by the statute. *Id.* at 288 n.5. As a result, we conclude that the two-year statute of limitations under § 541.051 applies to the Minch Family's claims for damages and equitable relief.

As noted above, both the six-year period, under § 541.05, and the two-year period, under § 541.051, could conceivably apply to the Minch Family's claims. When two statutes of limitations potentially apply to the same action and cannot be reconciled, Minnesota courts will apply the more particular provision over the general provision. *Ford v. Emerson Elec. Co.*, 430 N.W.2d 198, 200 (Minn. 1982) (citing Minn. Stat. § 645.26, subdiv. 1). The two-year period in § 541.051 applies to actions

"in contract, tort, or otherwise . . . arising out of the defective and unsafe condition of an improvement to real property." Minn. Stat. § 541.051, subdiv. 1(a). Section 541.051 is a more specific provision for real property improvements than the more general six-year period for claims under § 541.05. *See Nolan & Nolan*, 673 N.W.2d at 496–97 ("Claims of nuisance and trespass arising out of a defective condition of an improvement to real property are governed by the statute of limitations in Minn. Stat. § 541.051 rather than the six-year statute of limitations in Minn. Stat. § 541.05 . . . ."). Thus, the Minch Family's claims are subject to a two-year statute of limitations.

### 2. *Accrual Date*

Under § 541.051, subdivision 1(c), the two-year limitations period begins "upon discovery of the injury." This means that the limitations period "begins to run when an actionable injury is discovered, or with due diligence, should have been discovered, regardless of whether the precise nature of the defect causing the injury is known." *Nolan & Nolan*, 673 N.W.2d at 497 (quotation and citation omitted). Under this rule, the plaintiff need not be aware of the full extent of its injury, so long as it is aware of some injury. *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 333–34 (Minn. 2010).

Here, the record reflects that the Minch Family experienced flooding as a result of the field dike as early as November 27, 2000, when the Minch Family first complained to the BRRWD. The Minch Family argues that the limitations period did not begin until 2004, when it sustained "significant and calculable crop damage." This argument, however, relates to the extent of the Minch Family's injuries—not the fact of the injury. *See id.* Even viewed in a light most favorable to the Minch Family, the record shows that the Minch Family first discovered its injury no later than November

27, 2000.[3] The Minch Family did not file this suit until September 7, 2007. Thus, absent an exception to, or tolling of, the statute of limitations, the Minch Family's complaint is time-barred.

### 3. *Possible Exceptions to, or Tolling of, the Limitations Period*

As noted, the Minch Family argues that the continuing trespass rule preserves its claims despite the statute-of-limitations bar. If applicable, this rule would allow the Minch Family to seek recovery for damages sustained in the two-year period immediately preceding the filing of its complaint on October 14, 2008. *See Hebert*, 744 N.W.2d at 233 (explaining that a continuous trespass would allow the plaintiffs to recover damages for the interference with their property rights that occurred during the limitations period immediately preceding the filing of the action). The Minch Family, however, has not cited any authority to support applying this exception to the two-year statute of limitations under § 541.051. In contrast, as the district court noted, the Minnesota Court of Appeals, in a recent unpublished decision, held that the continuing trespass exception does not apply to § 541.051. *Geary v. Miller*, No. A08-1216, 2009 WL 1515505, at *3 (Minn. Ct. App. June 2, 2009) (unpublished), *rev. denied* (Minn. Aug. 11, 2009). As the *Geary* court explained:

> Section 541.051 expressly states that, when the other conditions for the time bars are met, "no action [can be brought] by any person in contract, tort, *or otherwise to recover damages*." *Id.*, subd. 1(a) (emphasis added). This language does not reasonably allow an interpretation that continuing trespass is exempted from the bar. Likewise, the statute has specifically delineated exceptions to the time bars, none of which address

---

[3]In its brief, when discussing the accrual date, the Minch Family refers to the water problems in 2000 and 2001 as a "drainage problem"—in apparent contrast to the "crop damage" in 2004. At several other points in its brief, however, the Minch Family refers to the "flooding" in the early 2000s. The record reflects that the Norbys' field dike did, in fact, cause flooding on the Minch Family's property in 2000 and 2001.

continuing trespass. *See id.*, subd. 1(b)–(e) (defining exceptions or limitations to time bar in subdivision 1(a)). It would not be reasonable to infer an exception for continuing trespass when the statute has listed exceptions that do not include it.

*Id.*

We find the Minnesota Court of Appeals's reasoning in *Geary* persuasive. *Cf. Baribeau v. City of Minneapolis*, 596 F.3d 465, 475 (8th Cir. 2010) ("Decisions from the Minnesota Court of Appeals are particularly relevant and we must follow such decisions when they are the best evidence of Minnesota law." (quotation and citation omitted)). Thus, we conclude that the possible existence of a continuing trespass cannot exempt a portion of the Minch Family's claim from the two-year statute of limitations under § 541.051.

Alternatively, the Minch Family argues that the statute of limitations was tolled from the early 2000s until September 7, 2007, when it was seeking relief from the BRRWD. Under Minnesota law, "[t]he plaintiff bears the burden of proving that the statute of limitations should be tolled." *Mercer v. Andersen*, 715 N.W.2d 114, 120 (Minn. Ct. App. 2006).

We conclude that the Minch Family has failed to meet this burden. The Minch Family cites cases showing that, when challenging the action (or inaction) of an administrative agency, a plaintiff must first exhaust its administrative remedies before pursuing relief in court. *See, e.g.*, *Zaluckyj v. Rice Creek Watershed Dist.*, 639 N.W.2d 70, 75 (Minn. Ct. App. 2002) (suit to force watershed district to repair a ditch); *see also Ammon Corp. v. City of Eagan*, 348 N.W.2d 66, 71–72 (Minn. 1984) (suit challenging a zoning decision). These cases demonstrate that the Minch Family would be required to pursue any available administrative remedies before *suing the BRRWD* to get the BRRWD to enforce its drainage rules and regulations. These cases, however, do not address whether a plaintiff has to seek administrative relief before

*suing a private individual*. Although the Minch Family claims that the BRRWD did not "release [its] jurisdiction" over the Norbys' field dike until September 7, 2007, the Minch Family has cited no laws, rules, or regulations demonstrating that the BRRWD has exclusive jurisdiction over private water flow disputes between private landowners. Moreover, the record belies the Minch Family's assertion that the BRRWD somehow "accepted" and later "released" jurisdiction over the field dike. The record merely reflects that the Minch Family complained to the BRRWD, at public meetings, about the field dike; the BRRWD followed up on those complaints; and the BRRWD ultimately chose to take no action. The Minch Family has not demonstrated how it would have been barred from concurrently bringing a private suit against the Norbys. Accordingly, the Minch Family has failed to meet its burden of showing that the two-year statute of limitations should be tolled, and its claims are untimely.

## B. *Punitive Damages*

The Minch Family next contends that the magistrate judge erred in denying its motion to amend its complaint to allege a claim for punitive damages. Because we have affirmed the district court's dismissal of the Minch Family's claims as barred by the statute of limitations, "the issue of punitive damages is moot." *Ocean v. Pomeroy*, No. A08-0878, 2009 WL 511757, at *8 (Minn. Ct. App. Mar. 3, 2009) (unpublished) (citing *Obermoller v. Fed. Land Bank of St. Paul*, 409 N.W.2d 229, 230–31 (Minn. Ct. App. 1987)), *rev. denied* (Minn. May 19, 2009).

## C. *Scheduling Order*

Finally, the Minch Family argues that the magistrate judge abused its discretion in denying its motion to amend the court's scheduling order. Because the Minch Family's motion only related to its claim for punitive damages, however, we need not address this issue.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____