*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1146**

Estate of Gladys I. Norby, et al.,
Appellants,

vs.

Waseca Mutual Insurance Company n/k/a Austin Mutual Insurance,
Respondent.

**Filed May 18, 2015
Affirmed
Larkin, Judge**

Clay County District Court
File No. 14-CV-13-1608

Zenas Baer, Zenas Baer Law Office, Hawley, Minnesota; and

Scott Wilson, Minneapolis, Minnesota (for appellants)

Kevin A. Velasquez, Benjamin D. McAninch, Blethen, Gage & Krause, PLLP, Mankato, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant-insured challenges the district court's grant of summary judgment to respondent-insurer, arguing that the district court erred by determining that respondent-insurer did not have a duty to defend appellant-insured in a civil lawsuit. We affirm.

**FACTS**

The Norby and Minch families own adjacent parcels of farmland near the Buffalo River in Minnesota. In October 2008, the Minch family, acting through a limited liability limited partnership, sued appellant Robert Norby (Norby) in federal district court, in his individual capacity and as the personal representative of appellant Estate of Gladys I. Norby. The Minch family claimed that "an L-shaped field dike built and maintained" by Norby caused a portion of the Minch property to flood during heavy rain. The complaint alleged that Norby wrongfully altered a natural drainage way, violated the reasonable-use doctrine, and was liable for trespass, nuisance, strict liability, and deliberate disregard for the Minch family's rights.

At all times relevant to the Minch family's claims, Norby was insured under a "farm personal liability policy" issued by respondent Waseca Mutual Insurance Company, now known as Austin Mutual Insurance (Austin Mutual). Norby notified Austin Mutual of the Minch lawsuit shortly after service of the summons and complaint. In December 2008, Austin Mutual denied coverage based on the policy's intentional-act exclusion, reasoning that because the complaint alleged that Norby had acted intentionally, there was no accident or "occurrence" under the policy. Austin Mutual also

denied coverage based on the policy's criminal-act exclusion, reasoning that because the complaint alleged that Norby violated rules of the Buffalo-Red River Watershed District (BRRWD), his actions allegedly were illegal.

The federal district court granted summary judgment for Norby after determining that a two-year statute of limitations applied and that the Minch family had been aware of the flooding since at least 2000 or 2001. The Eighth Circuit affirmed. *Minch Family LLLP v. Estate of Norby*, 652 F.3d 851 (8th Cir. 2011).

In June 2012, Norby initiated a declaratory-judgment action in Minnesota district court, alleging that Austin Mutual breached its duty to defend Norby in the Minch lawsuit. Norby sought $66,264.81 for legal fees and expenses incurred defending the lawsuit. Norby and Austin Mutual each moved for summary judgment.

The district court granted summary judgment to Austin Mutual and dismissed Norby's claims. The district court reasoned that Austin Mutual did not have a duty to defend for three reasons. First, because the allegations in the Minch complaint do not allege an "occurrence" as defined by the policy, the Minch family's claims against Norby are beyond the scope of coverage. Second, because the Minch complaint alleges only intentional conduct, the policy's intentional-act exclusion applies. And third, because the Minch complaint alleges that Norby violated BRRWD rules and illegally maintained the field dike, the policy's criminal-act exclusion applies.

Norby appeals.

3

**D E C I S I O N**

A summary-judgment motion "shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[Appellate courts] review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761.

**I.**

Norby challenges the district court's grant of summary judgment, arguing that because the Minch complaint alleged a violation of the reasonable-use doctrine, Austin Mutual had a duty to defend "as a matter of law."

The interpretation of an insurance policy, including whether an insurer has a legal duty to defend its insured, is a question of law and reviewed de novo. *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996).

> An insurer has a contractual duty to defend a covered claim brought against its insured when the insurer undertakes such a duty in the insurance policy. A potential duty to defend a particular claim is triggered when the insured tenders notice of suit and opportunity to defend to the insurer. The existence of the duty to defend the claim is determined by comparing the language of the allegations in the

4

> underlying complaint to the relevant language in the insurance policy. If any part of the suit is arguably within the scope of coverage, the insurer must defend; only if the insurer proves that all claims in the suit are clearly outside coverage does it not have a duty to defend.

*Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 616 (Minn. 2012) (citations and quotation omitted).

Norby's policy with Austin Mutual covers liability for "property damage caused by an occurrence." The policy defines "occurrence" as "an accident," including "loss from repeated exposure to similar conditions." The policy does not define "accident," but caselaw establishes that "accident" means "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Hauenstein v. St. Paul-Mercury Idem. Co.*, 242 Minn. 354, 358-59, 65 N.W.2d 122, 126 (1954). An insurer may establish intent to injure, and therefore lack of coverage, in two ways. *Ram Mutual Ins. Co. v. Meyer*, 768 N.W.2d 399, 403 (Minn. App. 2009), *review denied* (Minn. Oct. 20, 2009). An insurer may offer proof of actual intent to injure, or intent to injure may be inferred as a matter of law. *Id*. As a general rule, "intent is inferred as a matter of law when the nature and circumstances of the insured's act are such that harm is substantially certain to result." *Id*. at 403-04 (quotation omitted).

Norby's policy with Austin Mutual excludes coverage for property damage that is "expected by, directed by, or intended by an insured," "the result of a criminal act of an insured," or "the result of an intentional and malicious act by or at the direction of an insured." For the purpose of determining whether an intentional-act exclusion applies, a court considers "whether the insured specifically intended to cause injury." *Id*. at 404-05.

5

"[T]he questions of whether an injury is the result of an accident and whether coverage is excluded because the injury is the result of an intentional act are for all practical purposes, identical issues." *Id.* at 405 (quotation omitted).

The Minch complaint alleges that there was a "robust natural drainage way" that flowed near or on the Minch family's and Norby's properties until Robert Norby constructed "a two-sided field diking system [that] completely blocked the natural drainage way." Norby also constructed a "control structure to control water backing up the natural drainage way onto [Norby's property] and regulating water leaving that property." The Minch family "complained to the Buffalo-Red River Watershed District . . . about [Norby's] field diking and control structure." Norby's field dikes washed out in 2001, and the BRRWD told Norby that he could not repair the washout without a permit because doing so would be "illegal." Norby quickly repaired the washout despite the BRRWD's warnings. The BRRWD filed a proposed criminal complaint against Norby with the local prosecutor in 2006. The Minch complaint alleges that Norby's dike system "damaged the farmland of [the] Minch Family by at least $75,000," and that Norby "acted with deliberate disregard for the rights of the Minch Family" and "in a conscious and intentional disregard of the high degree of probability of injury to the rights of the Minch Family."

Based on the allegations in the complaint, the district court determined that it was "reasonable to infer Norby's intent to injure as a matter of law and to conclude that the damages to [the Minch] farmland and crops . . . were not 'accidental' and therefore did not constitute an 'occurrence' under the terms of the policy." Norby contends that

6

because the Minch complaint asserts a violation of the reasonable-use doctrine, Austin Mutual had a duty to defend "as a matter of law." Specifically, Norby argues that because any alleged violation of the reasonable-use doctrine necessarily implies "that the violator failed to observe reasonable care," the Minch family's reasonable-use claims satisfy the policy definition of an "occurrence."

The Minch complaint alleges that Norby violated the reasonable-use doctrine. The supreme court has described the reasonable-use doctrine as follows:

> Drainage of surface waters from one's own land onto another's is a "reasonable use" if there is a reasonable necessity for such drainage, if regard is taken to avoid unnecessary injury to others, if the utility or benefit to the land drained outweighs the harm to the land receiving the water, and if, where practicable, the drainage is done by improving the natural system or providing a feasible artificial one.

*Highview N. Apartments v. Ramsey Cnty.*, 323 N.W.2d 65, 71 (Minn. 1982). "'Reasonable use' . . . is a different theory than 'reasonable care,' a negligence concept." *Wilson v. Ramacher*, 352 N.W.2d 389, 393 (Minn. 1984). "'[R]easonable use' refers rather to a reasonable regard for the rights of others so that harm may be prevented or minimized." *Highview*, 323 N.W.2d at 72.

We agree with Norby that a reasonable-use violation may be established based on negligent or unintentional conduct. *See id.* ("In a case where the plaintiff had chosen to sue in negligence for harm caused by a diversion of surface water, . . . we nevertheless analyzed the liability on appeal in terms of the reasonable use test."). However, Norby's argument ignores the factual allegations in the Minch complaint, which assert that Norby

7

deliberately violated the reasonable-use doctrine and disregarded the high probability of resulting injury to the Minch family's property. Minnesota caselaw establishes that an insurer's duty to defend is determined based on the factual allegations supporting the complaint and not on the stated legal theories of liability. In other words, substance governs over form.

For example, the supreme court has concluded an insurer does not have a duty to defend when the undisputed facts establish that there was no coverage, "even if the complaint can be read to allege a set of facts which, if proved, would be within coverage." *Farmers & Merchs. State Bank of Pierz v. St. Paul Fire & Marine Ins. Co.*, 309 Minn. 14, 20-21, 242 N.W.2d 840, 844 (1976). Likewise, this court has concluded that an insurer did not have a duty to defend, even though the underlying complaint alleged negligence, because the claim was "causally connected" to intentional conduct. *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912-13 (Minn. App. 1987), *review denied* (Minn. Sept. 23, 1987).

This court has also concluded that an insurer did not have a duty to defend even though the underlying complaint alleged simple negligence, because the stipulated facts established that the insured acted recklessly, reasoning that "the nature of the cause of action is separately determined to decide if it constitutes an insured occurrence, independent of the way the claim is characterized in the underlying lawsuit." *Farmers Union Oil Co. v. Mut. Serv. Ins. Co.*, 422 N.W.2d 530, 533 (Minn. App. 1988). Lastly, this court has concluded that an insurer did not have a duty to defend against a negligence suit because the alleged negligence was "so intertwined" with conduct supporting an

8

inference of intent to injure that it relieved the insurer of its duty to defend. *Houg v. State Farm Fire & Cas. Co.*, 481 N.W.2d 393, 397 (Minn. App. 1992), *review denied* (Minn. May 15, 1992).

The caselaw is clear: an insurer's duty to defend is based on the substance of the lawsuit and not on the legal theory of recovery stated in the complaint. Thus, Norby's focus on the possibility that the Minch family could have proved a reasonable-use violation based on unintentional conduct is unavailing. The caselaw focuses on the factual underpinnings of the lawsuit and not on hypothetical theories of recovery. For the same reason, Norby's argument that Minnesota's notice-pleading standard requires courts to interpret an insurer's duty to defend based on "any state of the facts that would support the claims contained in the complaint" is also unavailing. That proposition is at odds with caselaw allowing coverage decisions to be based on the facts underlying the lawsuit and not on the legal theories selected by the plaintiff or on hypothetical legal theories that plaintiff could have selected.

Norby argues that given the broad nature of an insurer's duty to defend, Austin Mutual was obligated to defend. *See Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165-66 (Minn. 1986) ("A duty to defend an insured on a claim arises when any part of the claim is arguably within the scope of the policy's coverage . . . ." (quotation omitted)). However, a competing policy in insurance law is that an insurer can only set premiums and supply coverage if losses are uncertain. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 408 (Minn. 1998). "If [a] single insured is allowed through intentional or

9

reckless acts to consciously control the risks covered by [an insurance] policy, a central concept of insurance is violated." *Id.* (quotation omitted).

In sum, Norby's alleged violation of the reasonable-use doctrine did not obligate Austin Mutual to defend Norby as a matter of law. The district court properly considered "the allegations of the Minch complaint as a whole" and focused on the gravamen of the complaint: that by constructing, repairing, and maintaining the dike and berm system, Norby consciously and intentionally disregarded "the high degree of probability of injury to the rights of the Minch family." The district court noted that "[t]he [c]omplaint contains no allegations that Norby's actions were unintentional, negligent, or accidental in any way." Given the substances of the lawsuit, the district court correctly ruled that the complaint did not allege an "occurrence" under the policy, that the Minch family's claims against Norby are not covered by the policy, and that Austin Mutual therefore did not have a duty to defend.

## II.

Norby also contends that "the district court erred by drawing an inference of intent as a matter of law . . . , in light of facts arguably establishing that the damage to the [Minch family's] property was accidental." Once again, the district court determined that "it is reasonable to conclude that harm to Minch was reasonably certain to result based on the nature and circumstances of Norby's actions alleged in the [c]omplaint and an inference of intent to harm is thus appropriate."

"The determination to infer intent as a matter of law results from a case by case factual inquiry, not a bright line rule of law. More specifically, the facts of particular

10

importance are those tending to show the likelihood of the harm—the greater the likelihood of the harm occurring, the more reasonable it is to infer intent." *R.W. v. T.F.*, 528 N.W.2d 869, 873 (Minn. 1995).

Appellate courts generally "determine a duty to defend by comparing only those allegations in the *complaint* with the appropriate language in the *policy*." *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 418 n.19 (Minn. 1997). "Only when actual facts within the insurer's knowledge clearly establish the existence or nonexistence of an obligation to defend, will [a] court hold that the complaint is not controlling." *Id.* The insured has the initial "burden of proving the existence of coverage." *Kabanuk Diversified Invs., Inc. v. Credit Gen. Ins. Co.*, 553 N.W.2d 65, 70 (Minn. App. 1996), *review denied* (Minn. Oct. 28, 1996).

Norby argues that "facts readily available in the complaint and in the record beyond it[] arguably establish[] that the flooding was accidental." He relies on his "publicly filed answer" and the "publicly available Eighth Circuit opinion affirming dismissal of the Minch complaint," which suggest that the diking system had been in place since the 1950s. He also points to an exhibit attached to the Minch complaint that references "the 1979 issuance of a BRRWD permit for repair and straightening of [the] dike." He insists that, "[w]here, as here, such facts are readily available to the insurer and also contained in the underlying complaint itself, an issue of fact as to the existence of covered claims exists, and a duty to defend is triggered."

Norby's argument is unavailing because he does not show that Austin Mutual knew that the diking system was in place since the 1950s or that the BRRWD issued a

permit to repair the dike in 1979. Norby served his answer after Austin Mutual denied a defense, and the Eighth Circuit opinion was not released until more than two years after Austin Mutual denied a defense. Moreover, Austin Mutual's letter informing Norby of its decision states that Norby did not provide Austin Mutual with a copy of the exhibits to the Minch complaint and invited Norby to provide additional information. We find nothing in the record suggesting that Norby did so. In sum, the "readily available facts" that Norby relies on were not available to Austin Mutual when it determined that it did not have a duty to defend.

To the extent that Norby suggests that Austin Mutual should have further investigated the Minch family's claims and discovered those "readily available facts," caselaw provides otherwise. The supreme court "has consistently stated that where the insurer has no knowledge to the contrary, it may make an initial determination of whether or not it is obligated to defend from the facts alleged in the complaint against its insured." *Garvis v. Emp'rs Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993). "Where the pleadings do not raise a claim arguably within the scope of coverage, the insurer has no duty to defend or investigate further to determine whether there are other facts present which trigger such a duty." *Id.* Accordingly, Austin Mutual was not required to seek out facts beyond the Minch complaint to determine whether it had a duty to defend.

The Minch complaint supports the district court's determination that it was "reasonable to infer Norby's intent to injure as a matter of law." The complaint describes an ongoing conflict between Norby, the Minch family, and the BRRWD concerning Norby's dike and berm system. The complaint alleges that Norby was advised that his

12

maintenance of the system lacked proper permits and violated BRRWD rules. The complaint alleges that by constructing, repairing, and maintaining the dike and berm system, Norby deliberately disregarded the Minch family's rights and the high probability that their property would be damaged. Because the complaint does not give rise to a genuine issue of material fact regarding Norby's intent to injure, the district court did not err by inferring intent as a matter of law.

In conclusion, the district court did not err by granting summary judgment for Austin Mutual based on its determination that Austin Mutual did not have a duty to defend Norby because the Minch complaint did not allege an occurrence and because coverage is excluded under the intentional-act exclusion. We therefore affirm without considering application of the policy's criminal-act exclusion. *See Stansell v. City of Northfield*, 618 N.W.2d 814, 818 (Minn. App. 2000) ("We will affirm a grant of summary judgment if it can be sustained on any ground."), *review denied* (Minn. Jan. 26, 2001).

**Affirmed.**